CITY OF RICHMOND *v.* SMITH.

The council of the city of Richmond, towards the close of the rebellion, and in anticipation of the entry into the city of the forces of the United States, which were then beleaguering it, passed a resolution that the stock of liquors in the city should be destroyed by committees to be appointed to do this, who should give receipts to the holders; the council pledging the faith of the city to the holders for the value. The stock of S was destroyed accordingly. Almost immediately afterwards, the Confederate government, against the protest and remonstrance of the city council, set fire to certain tobacco warehouses and other buildings

\* 13 Wallace, 247.

*near* the premises where S had his liquors, whereby the premises of S. and his liquors were destroyed. S. sued the city, counting specially on the resolutions, the destruction of his liquor, and stating that he had no receipts. The city demurred. The court overruled the demurrer.

The defendant then pleaded specially the fact of the firing of the tobacco warehouse, &c., *near* to S 's premises, and that at the instant of destruction the premises were about to take fire from the tobacco warehouses, and did in a short time thereafter actually take fire; that the city had no means to extinguish that fire, and that the liquors were consumed; and would have been consumed by the fire if the committee had not destroyed them, and that so they were of no value to the plaintiff. The plaintiff demurred. The court sustained the demurrer.

The parties now went to trial, when they agreed to waive a jury and to submit all questions of fact to the court, "with authority to draw all inferences and conclusions that a jury is authorized to draw from the evidence, and with liberty to either party to except to the judgment in the same manner and to the same extent that he might except to the verdict of a jury, and to object to the same for the same reasons and with the right to appeal from the same." The court found for the plaintiff generally.

*Held* (the highest State court of Virginia having in a similar case held the city liable):

1st. That the declaration was good; in other words, that the action lay against the city.

2d. That the special plea was bad; in other words, that the fact that the plaintiff would have lost his liquors in any event, was no defence.

3d. That the defendant could not under the agreement raise any questions as to the effect of evidence, &c., in this court, with a view of making this court find as true the facts set forth in the special plea; which plea, as above mentioned, if true, was declared to be no defence.

ERROR to the Circuit Court for Virginia; the case being thus:

On the 2d of April, 1865—the rebellion then in throes, and the city of Richmond lying open to the entry of the government troops that had beleaguered it—its council, in order to prevent drunkenness, and some of the horrors incident to the occupation of a town by an invading army, passed certain resolutions, hereinafter set forth, for the destruction of all liquor in the city; and pledging the faith of the city to the owner for payment of its value. A stock of liquor owned by one Smith was thus destroyed, and on the suppression of the rebellion and the return of peace, Smith sued the city accordingly.

The declaration contained two counts; one special and the other general.   The special count alleged that,

" Whereas, on the 2d of April, 1865, in the then condition of the government and army of what were then called the Confederate States of America, and in contemplation of the said army giving way to the army of the United States of America, there was held in the said city a meeting of the council of the said city for what was then considered a work of necessity, and at the said meeting the council of said city adopted certain resolutions as follows:

"1. *Resolved*, That it is the imperative duty of this council, in case of the evacuation of this city by the government and army, to provide, as far as it can, for the immediate destruction of the stock of liquor in the city.

"2. *Resolved*, That a committee of twenty-five citizens in each ward be appointed by the president, to act on behalf of the city, and proceed at once to accomplish this object, that said committee destroy, on the premises, all the liquor they can find, *giving receipts for the same to the holders*.

"3. *Resolved*, That the faith of the city be, and is hereby, pledged for the payment of the value of all liquor so destroyed to the holders of said receipts.

" And the plaintiff avers that, during the evening of the same 2d day of April, 1865, and the morning of the next day, there did occur such evacuation of the said city by the government and army, as was contemplated by the first of said resolutions; and that a committee was appointed, according to the second of said resolutions; and that, on the 3d day of April, 1865, said committee did, in pursuance of said second resolution, destroy on the premises a large quantity of liquor found by them, and in most of the cases did give receipts for the same to the holders; and among the liquor so destroyed, *and for which no receipts were so given*, was a large quantity of whisky, brandy, rum, and alcohol, to wit—particulars given—the total value of all which liquors amounts to the sum of $2832, whereof the plaintiff was before, and at the time of such destruction, lawfully possessed as of his own property, by means whereof the faith of the said city was, and is, pledged for the value of all the said liquor of the plaintiff so destroyed, to the plaintiff, which value amounts to a large sum of money, to wit, to the sum of $2832, of all which the defendant heretofore, to wit, on the 3d day of April, 1865, had due notice; by reason whereof the defendant became liable to pay to the plaintiff the said value, amounting,

as aforesaid, to a large sum of money, to wit, the sum last speci-
fied; and, being so liable, the said defendant, in consideration
thereof, afterwards, to wit, on the day and in the year last men-
tioned, undertook and promised to pay him the same when the
said defendant should be thereto afterwards requested."

To this special count the defendant demurred, but the
court overruled the demurrer; the city excepting. A de-
fendant, by the practice of Virginia, not losing the benefit
of his demurrer by pleading over, the city then pleaded
specially,

"That, at the time of the destruction of the liquor of the
plaintiff, and long prior thereto, it had been determined by the
*Confederate government* to set fire to the *tobacco warehouses* and
other buildings in said city, upon the evacuation of the city,
*against the protest and remonstrance of the said council,* and that
one of the said warehouses was situated *near* the premises of
the said *plaintiff;* that, in pursuance of the said determination
the Confederate government did on the day aforesaid, set fire
to the said *warehouses* and other buildings, whereby the premises
of the plaintiff and all the property on them were destroyed by
fire; and that said city had no means by which it could arrest
and extinguish the fire; and that at the instant when the said
committee were destroying the said liquor, the house of the
plaintiff, in which the liquor was stored, was about to take fire,
and did in a short time thereafter actually take fire and was
consumed, and that the said liquors would have been consumed
therein, as the said plaintiff was wholly unable to remove the
same; and the defendant avers that the liquor of the plaintiff so
destroyed *by the committee* as aforesaid would, if the same had
not been so destroyed by the committee, have been consumed
by the said fire; and that by reason thereof the liquor was of
no value to the plaintiff, and by its destruction as aforesaid the
said plaintiff has sustained no loss."

The plaintiff demurred generally. The demurrer was
sustained.

The parties went to trial; agreeing to waive a trial by
jury, and to submit all questions of law and fact to the de-
cision of the court, "with authority to draw all the infer-
ences and conclusions that a jury is authorized to draw from

the evidence, and with liberty to either party to except to the judgment of the court in the same manner and to the same extent that he might except to the *verdict of a jury,* and to object to the same *for the same reasons, and with the right to appeal from the same.*"

On the hearing the plaintiff gave evidence to show the destruction and value of his liquor; and in showing this, they showed that he got no receipts from the committee; that they had no time to give them, and here rested.

The record now proceeded in these words:

" And this being all the evidence he offered here closed his case.

" And then the defendant offered no evidence except evidence to prove the facts alleged and set forth in said special-plea, but the court refused to receive said evidence and excluded the same; to which opinion of the court refusing to receive said evidence and excluding the same, the defendant excepted, and tendered this his bill of exceptions, and prayed that the same might be signed, sealed, and reserved to him, which is done accordingly.

                                  " HUGH L. BOND,

[SEAL.]        " Judge of the Circuit Court of the United States
                  for the 4th Circuit and District of E. Virginia."

The court found the facts generally for the plaintiff, and gave judgment accordingly for $2832, with interest from the 3d of April, 1865.

To this judgment the defendant excepted, and the case was now here on error.

In this court the case was submitted on printed briefs, the only error assigned in that of the plaintiff in error being that—

"The Circuit Court erred in *overruling the demurrer to the special count in the plaintiff's declaration.*"

It is proper to mention that in the case of *Jones & Co.* v. *City of Richmond,** on a suit against the city arising on the

---

                    * 18 Grattan, 517.

same resolutions, the Court of Appeals of Virginia had decided that the city was liable to the holders of receipts given under the resolutions of the city council.

*Mr. L. R. Page, for the city, plaintiff in error:*

There was error in overruling the demurrer to the special count in the declaration.

The liability of the city, if any there be, for the destruction of the plaintiff's liquors, can only be upheld upon the ground that the city made a valid contract to pay for their value. The destruction of this property was not a taking of private property for public uses, for which compensation is required to be made. The resolves of the city council were made and executed for the public weal, at a time of imminent peril. The rights of private property, sacred as they are, must yield to the higher demands of the public safety. In such cases *salus populi, suprema est lex.* The proceedings upon which the plaintiff below rested his claim, are like those where an individual or a municipality *raze* houses to prevent the spread of an existing conflagration; and it is well settled that this may be done without responsibility to the owner for the damages he sustains.

In *Mouse's Case,*[*] Lord Coke says:

"For the commonwealth, a man shall suffer damage, as for the saving of a city or town, a house shall be plucked down if the next be on fire. This every man may do, without being liable to an action."

There was, therefore, no consideration for the undertaking of the city to pay the value of the liquors destroyed. The judge who delivered the opinion derives the power of the city to make the order and pledge, from the *general welfare* clause in the charter. Similar provisions are to be found in the charter of nearly every municipality in the land, and yet it is believed no case can be found where the exercise of such powers has been maintained, unless there was express authority therefor, either in the charter or some

---

[*] 12 Reports, 63, Ib. 13.

general statute.   It is manifest that the language of this general provision must be construed with reference to the other powers granted the city, otherwise the specific grant of powers would have been useless, and it is further manifest that the power to be exercised under these general words, must be exercised by fixed by-laws, rules, or ordinances, and not by some isolated and instantaneous act.

The decision is questioned by Dillon in his able treatise on Municipal Corporations,* and it is there intimated that the order for the destruction of liquors was not within the scope of the corporate powers of the city.

But if the decision in *Jones & Co.* v. *The City of Richmond*, as to the validity of this contract, be binding in this forum because it may be regarded as a local question, then it is insisted that the defendant in error has not brought himself within the terms of the resolutions of the council so as to entitle him to maintain this suit.   He holds no receipt from the commissioners authorized to destroy the property, and the faith of the city is pledged only to those who hold such receipts.

*Mr. W. F. Mattingly, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Prior to the surrender of the city of Richmond to the Federal forces, and in contemplation of that event, which took place on the same day, the city council adopted the following resolutions: (1.) That it is the imperative duty of this council, in case of the evacuation of this city by the government and army, to provide as far as it can for the immediate destruction of the stock of liquor in the city.   (2.) That a committee of twenty-five citizens in each ward be appointed by the president to act in behalf of the city and proceed at once to accomplish this object; that said committee destroy on the premises all the liquor they can find, giving receipts for the same to the holders.   (3.) That the faith of the city

---

* Page 366, note 1.

be, and is hereby, pledged for the payment of the value of all liquors so destroyed to the holders of said receipts.

Such evacuation of the said city by the government and army as that contemplated by the first resolution did occur during the evening of that day and the morning of the next day, and it appears that the committee contemplated by the second resolution was appointed, and that they, on the following day, in pursuance of said second resolution, destroyed on the premises of the plaintiff the liquors mentioned in the declaration, of the value specified in the bill of particulars filed in the case and annexed to the declaration.

Payment having been refused the plaintiff brought an action of assumpsit against the corporation defendants to recover the value of the liquors destroyed, as promised in the third resolution. Service was made, and the defendants having entered their appearance demurred to the special count, but the court overruled the demurrer and the parties having waived a jury submitted the cause under the pleadings to the decision of the court.

Two pleas were pleaded by the defendants, as follows: (1.) That they never undertook and promised as alleged in the declaration. (2.) That prior to the destruction of the liquors as alleged, the Confederate government determined, in case the city should be evacuated as supposed, to set fire to the warehouses and other buildings in the city, and that they did on that day set fire to such warehouses and buildings, including the premises of the plaintiff, and that the same were destroyed by fire; that the building in which the liquors were stored took fire shortly after the liquors were destroyed, and was consumed, and that the liquors, if they had not been destroyed, would have been consumed.

Issue was joined upon the first plea and the plaintiff demurred to the second, and the court sustained the demurrer and held the plea to be insufficient. Evidence was introduced by the plaintiff and the court rendered judgment in his favor for the sum of two thousand eight hundred and thirty-two dollars, and the defendants excepted and removed the cause into this court.

Before proceeding to examine the questions which have been discussed at the bar, it becomes necessary to refer to certain other portions of the record, and more particularly to the agreement signed by the counsel waiving a trial by jury and submitting all questions of law and fact arising on the trial of the cause to the decision of the court. By that agreement it is also stipulated that the court may " draw all the inferences and conclusions that a jury is authorized to draw from the evidence, and with liberty to either party to except to the judgment of the court in the same manner and to the same extent that he might except to the verdict of a jury, and to object to the same for the same reasons."

Parties have a right to waive a trial by jury and submit the issues of fact to the determination of the Circuit Court, but they cannot by any such agreement make it the duty of this court to draw inferences and conclusions of fact from the evidence, nor to examine such inferences and conclusions of fact as may be drawn from the evidence by the Circuit Court.[*]

Pursuant to that agreement the court made a general finding as follows: " The court finds the facts for the plaintiff," and rendered judgment that the plaintiff recover of the defendants the sum of two thousand eight hundred and thirty-two dollars, with interest. Exceptions were taken at the time to the opinions of the court given against the defendants, but there is no exception to any ruling of the court in admitting or rejecting evidence, and no prayers for instructions of any kind were presented to the court.

Issues of fact in civil causes pending in the Circuit Courts may, if the parties so agree, be tried and determined by the court without the intervention of a jury, but such a submission necessarily implies that the facts shall be found by the court, and the act provides that the finding may be either general or special, and that it shall have the same effect as

[*] Shankland *v.* Washington, 5 Peters, 397; Suydam *v.* Williamson, 20 Howard, 434.

the verdict of a jury. Consequently where the finding is general nothing is open to review but the rulings or, perhaps, the instructions of the court as presented in a bill of exceptions, which is sufficient to show that nothing is open to reexamination in this case except the ruling of the court in sustaining the demurrer of the plaintiff to the second plea of the defendants.*

Much discussion of that question is certainly not required, as the theory of the plea is that if the defendants had not destroyed the liquors they would have been destroyed by fire, which is alleging what cannot be known, as the liquors might have been rescued from the conflagration by the energy of the citizens or of the police. Impending dangers give no immunity to one man to destroy the property of another. As well may a man in good health claim the right to take the life of his neighbor who is sick, and offer as a defence for his crime that the sick man would have died of his disease if he, the defendant, had withheld the mortal blow.

Suppose, however, the exceptions to the judgment are sufficient to raise the questions which the defendants desire to present for decision, still the court would feel constrained to affirm the judgment upon the ground that the Supreme Court of the State have decided in an analogous case that the corporate authorities of the city had authority under the charter of the city to make the order for the destruction of the liquors and to give the pledge for payment, and that the defendants are responsible for the value of the liquors destroyed under that order. State courts certainly have a right to expound the statutes of the State, and having done so, those statutes, with the interpretation given to them by the highest court of the State, become the rules of decision in the Federal courts.†

---

* Miller *v.* Life Insurance Co., 12 Wallace, 295; 13 Stat. at Large, 501; Bond *v.* Brown, 12 Howard, 254; Saulet *v.* Shepherd, 4 Wallace, 502.

† Jones *v.* Richmond, 18 Grattan, 517; Leffingwell *v.* Warren, 2 Black, 603.

Viewed in any reasonable light, the court is of the opinion that there is no error in the record.

JUDGMENT AFFIRMED.

Mr. Justice BRADLEY, dissenting:

I dissent from the judgment of the court in this case. A resolution adopted by the common council of an insurgent city just before its occupation by our armies, for the purpose of keeping any class of property out of its hands by destroying the same, is a sheer act of war, and no contract or stipulation for indemnity to persons whose property was thus destroyed had any validity after the collapse of the Confederacy. The owners of tobacco, cotton, or machinery destroyed on similar occasions are just as much entitled to set up stipulations for indemnity. The wounded soldier has just as good a right to claim damages from the Confederate soldier who wounded him.