[No. 342. January 17, 1889.]

## TORLINA, PLAINTIFF IN ERROR, V. TRORLICHT & HOHNSTRATER, DEFENDANTS IN ERROR.

ATTACHMENT, AFFIDAVIT FOR, UNDER SUBDIVISION 4, SEC. 1923, COMP. LAWS, N. M.—CONSTRUCTION OF STATUTES — ASSUMPSIT.—On an affidavit for attachment, in assumpsit, under subdivision 4, section 1923, Compiled Laws, providing that an attachment may issue "when the debtor is about fraudulently to convey or assign, conceal or dispose of his property or effects, so as to hinder, delay, or defraud his creditors," it is no sufficient ground that the debtor is about to make an assignment of property, the effect of which will be to delay creditors. Mere delay, which is a necessary incident to the conversion of property into cash to pay debts is not per se fraudulent; the language of the statute "about fraudulently to convey" clearly implies that there may be a conveyance or assignment which will merely delay creditors, as an incident to the transaction, without being fraudulent. But the delay must be so unreasonable as unduly to embarrass or hinder the creditor; and what constitutes such unreasonable delay must depend upon the particular circumstances of each transaction. Where there has been no such delay, the law will not impute fraud, especially not if it appear that the debtor acted in good faith, with the honest intent to apply his property to the just payment of his debts. Meyer v. Black, 4 N. M. 352.

ID.—ERROR—EVIDENCE, WEIGHT OF—VERDICT—FINDING.—On error in such case, from the finding of the court, sitting as a jury, the appellate court is not required to examine into the finding to determine whether it should not have been for the opposite party on the weight of the evidence. It is a well settled rule that the supreme court will not disturb the verdict of a jury, where there is any substantial evidence to sustain it; and this rule applies as well to the findings of a court as to the verdict of a jury.

ERROR, from a judgment in favor of defendants on the issue under the affidavit in attachment, and the refusal of the court below to declare the law as requested by plaintiff, to the Second Judicial District Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

Neill B. Field for plaintiff in error.

W. B. Childers for defendants in error.

Long, C. J.—The plaintiff in error was the plaintiff in the court below. There, in the district court of the county of Bernalillo, the plaintiff filed in the office of the clerk of said court his declaration in assumpsit and an affidavit for attachment. No question arises as to the sufficiency of the affidavit. Among other averments it contains the following: "The said affiant has good reason to believe, and does believe, that the said August Trorlicht and J. Henry Hohnstrater, partners in trade under the firm name of Trorlicht & Hohnstrater, are about fraudulently to convey, assign, conceal, and dispose of their property and effects, so as to hinder, delay, and defraud their creditors." Upon the affidavit issue was taken, the parties stipulated to waive a jury, and the cause was, on such stipulation, submitted to and tried by the court. After the close of the evidence the plaintiff asked the court to declare the law to be as follows: "First. If it appear from the evidence that, at the time of the suing out of the writ of attachment in this cause, the defendants were about to sell, assign, convey, or dispose of their property or effects, so as to hinder, delay, or defraud their creditors, the truth of the allegations of the affidavit for attachment is sustained. Second. The law presumes that every person intends that the reasonable and probable consequences of an act shall follow its commission, and, if it appears from the evidence that at the time of suing out the writ of attachment in this cause the defendants were about to make an assignment of all their property, and that the result of such assignment would be to hinder, delay, or defraud their creditors, then the law conclusively presumes that such assignment was about to be made with intent to

hinder, delay, or defraud the creditors of the defendants, and the finding should be for the plaintiff. Fifth. Any assignment contemplated by the defendants, the reasonable and probable result of which was to hinder their creditors in the collection of their debts, is sufficient to sustain the attachment in this cause. Sixth. Any assignment contemplated by the defendants, the reasonable and probable result of which was to delay the creditors in the collection of their debts, is sufficient to sustain the attachment in this cause." The court declined to declare the law to be as stated in said requests, and found for the defendants on the attachment proceeding, and rendered judgment on such finding, and also rendered a personal judgment for the sum of $1,650.30 in favor of the plaintiff, and against the defendants, on the averments of the declaration. It is the finding for the defendants on the issue under the affidavit in attachment and the refusal to declare the law as asked that is assigned for error.

The defendant in error contends the court can not review these questions. That contention is not sustained. The proposition of law which plaintiff asked the court to declare we conceive to be in effect, that any assignment, contemplated or about to be made by a debtor, the effect or result of which is to hinder or delay his creditors, is, under the statute of this territory relating to attachments, fraudulent as matter of law. We are aware that there is much respectable authority which gives strong support to the plaintiff's contention on this question, but believe the better reason is with the authorities which limit the proposition. The court below was not asked to declare that every assignment having the effect to create an unreasonable delay to the creditor should be held fraudulent, but to so declare if the assignment resulted in delay merely, however short the time might be, or however beneficially

ATTACHMENT: fraudulent conveyance: Sec. 1923, Comp. Laws construed.

it might result to the creditor. In the nature of things, every assignment must, to some extent, delay the creditor; but is the mere delay which is a necessary incident to the conversion of property into cash to pay debts to be held per se fraudulent? Suppose such a transaction to be made, as matter of fact, with the honest intention by the debtor, to enable him thereby, with all reasonable speed, to make early sale of the property and pay all his debts. Shall it be held fraudulent because some delay or hindrance shall occur to the creditor as a necessary incident to the honest application of the property to the payment of debts? We think not. Mr. Burrill, in his work on Assignments (section 335), says: "The term 'delay' has an obvious reference to time, and 'hindrance' to the interposition of obstacles in the way of a creditor; but, to a certain extent, the one involves and includes the other. In point of fact and as actually applied by the courts, they are always taken together. The following are prominent instances in which assignments have been declared void on the ground of hindrance and delay; where the time of sale, or collection by the assignee, or of finally closing the trust, has been, by the terms of the assignment, unreasonably or indefinitely postponed."

Here is to be found, at least under the fourth subdivision of section 1923 of our Compiled Laws, the true distinction and the real test to which every assignment, conveyance, or disposition of property should be brought. The test should be, not does the conveyance or assignment result in delay merely to the creditor, but does it involve unreasonable delay; and what would, or would not, be unreasonable delay must be determined by the particular facts of each transaction. If the delay was manifestly beneficial to the creditor, or one which in its probable result would be so to the creditor, it would not be unreasonable. While the fail-

ing debtor should be required to act in the utmost good
faith toward his creditors, he should not be tied up
with arbitrary inferences, unreasonable in kind, which
would prevent him from realizing for his creditor,
either by sale or assignment, the highest possible value
for his property, while intending to apply the same to
the payment of his debts, so long as he acts therein in
good faith, and so as not to create an unreasonable
delay in the conversion of the property. The phrase-
ology and spirit of the statute are both in harmony
with this view of the question.

It is provided in section 1923, Compiled Laws, that
creditors may sue their debtors in the district court
by attachment in certain cases, among which are
the following: "Fourth. When the debtor is about
fraudulently to convey or assign, conceal or dispose of,
his property or effects, so as to hinder, delay, or defraud
his creditors." The language of the statute must be
regarded in giving it construction, as well as its spirit.
It does not make the ground of attachment to be that
the debtor is about to convey or assign his property so
as to hinder or delay his creditors," but the words,
"convey" and "assign" are qualified and limited by
the adverb "fraudulently;" so that the phrase should
be read, in effect, "is about to fraudulently convey" or
"fraudulently assign." This language clearly implies
that there may be a conveyance or an assignment
which will merely delay creditors, as an incident to the
transaction, and yet not be fraudulent. An intent to
use language with that import by the legislative depart-
ment would be well founded in reason, and such con-
struction of the law of attachments would be more
advantageous both to the debtor and creditor, as it
enables the debtor to sell his property, so long as he
acts therein in good faith, without involving unreason-
ble delay, and to apply the proceeds to the payment of
his debts, and yet gives to the creditor his right to

attach, if the debtor acts in bad faith, or by means of a transaction creating an unreasonable postponement of payment. Such a rule brings the transaction attached to this test, is the delay so unreasonable in time and character as unduly to embarrass or hinder the creditor. If so, fraud may be imputed. But if there is delay merely, not unreasonable under all the circumstances, fraud will not, as matter of law, be imputed to the transaction, especially if it appear that the debtor is acting with an honest intent in fact to apply his property to the just payment of his debts. In the case of Meyer v. Black, 16 Pac. Rep. 620, this court considered substantially the same question, the same arising upon a written assignment, and applied to the facts of that case the rule here stated. The conclusions then reached are not only strengthened by the reasons before stated in this case, but also by some additional authority. In Minnesota (see Drake, Att. 670) the statute is: "The writ of attachment is issued whenever it appears by affidavit of the plaintiff * * * that the defendant is about to assign, secrete, or dispose of his property with intent to delay or defraud his creditors." This seems broader than the New Mexico statute, at least in terms, for it gives authority to the creditor to attach when the debtor is "about to assign his property with intent to delay his creditors;" and on such a statute, when the word "fraudulently" before the word "assign" is not used, it might be urged with much force that the intent to delay would be inferred from the fact that such would be the probable result of the act of selling, and, therefore, a sale creating any delay would be within the statute. But the court in Minnesota hold otherwise. The author just quoted, at section 77, cites the case of Eaton v. Wells, 18 Minn. 410 (Gil. 369), as a judicial construction in that state of the Minnesota statute, and says: "In Minnesota, an affidavit alleging that the defendant is

about to dispose of his property with intent to hinder, delay, and defraud his creditors was considered not to be sustained by showing that the defendant, who was insolvent, was about to sell for a fair price his property, consisting of an exempt homestead and other real estate, with the purpose and intent to apply all the proceeds, less a part of the price received for the homestead, to pay his just debts owing to a portion of his creditors. The court held that those facts afforded no just grounds for inferring that he was about to dispose of the property with the intent to defraud other creditors, and that the delay in paying the plaintiff, which might result from the defendant's paying the other creditors, was not such a delay as the statute contemplated."

The statute of the state of Missouri is identical with our own, and ours is adopted from that state. In Drake, Att. [5 Ed.] 672, the Missouri statute is set out in full, and, so far as it relates to the point under consideration, is as follows: "The plaintiff in any civil action may have an attachment against the property of the defendant in any of the following cases: ' * * * (9) When the defendant is about fraudulently to convey or assign his property or effects, so as to hinder or delay his creditors.' " In the same work (section 74) the case or Spencer v. Deagle, 34 Mo. 455, is cited, as giving construction in Missouri to the statute relating to attachments. The author says: "In a subsequent case it was decided that, in making such a conveyance, the fraudulent intent must be shown to have existed in order to sustain the attachment, and that it was not sufficient merely to show that the effect of the conveyance was to hinder and delay creditors." An examination of that case discloses that it fully supports the interpretation given to it by the learned author above cited. In that case the proceeding was by attachment. The averment in the affidavit was

"that the defendant had fraudulently conveyed or assigned his property so as to hinder or delay his creditors." To support the averment, evidence was given in the trial court that the defendant made a deed of trust of personal property, to secure a note of $2,500, and the defendant gave testimony tending to prove he did not owe the whole $2,500, but only a part of it, but that the note was given in part to cover goods which he expected to receive from the payee. In the very nature of the transaction, this trust deed somewhat delayed the plaintiff in that case. That one differs from the one here only in that the Missouri case alleged a completed act, while this one alleges the same act was about to be done, and both are predicated on statutes identical with each other. The principal involved is exactly the same. In the Missouri case, in the court below, the defendant asked the following instruction, which was refused: "The jury are instructed that, to render the deed of trust fraudulent as to Deagle's creditors, it must appear from the evidence, and you must be satisfied, that the deed was executed for that purpose. It is not enough that the effect of the deed is such as to delay creditors of the defendant. He must have executed it with that purpose and intent." For the refusal of the court, judgment having gone against defendant, he appealed. The supreme court say the instruction as asked should have been given, and because it was not given, reverse the action of the court below. The Missouri case seems exactly in point, and decisive of the question raised in the record of this case, as to the refusal of the court below to declare the law as asked. The following is also held in Missouri: "The fact that the sale may, or does, have the effect to hinder or delay the creditors is not sufficient to avoid it." Murray v. Cason, 15 Mo. 379; Gates v. Labeaume, 19 Mo. 17. The right to dispose of one's property for honest purposes is not terminated by indebtedness or

insolvency, although such a disposition may, or does, have the effect of hindering or delaying creditors." Dougherty v. Cooper, 77 Mo. 529. Identical as our statute seems to be with that of Missouri on this point, and adopted from that state, and the interpretation there given being founded in good reason, it should be followed here.

Another consideration shows the insufficiency of the legal propositions asked to be declared below. Suppose the affidavit in attachment in this case had been so drawn as to embrace only the proposition declared. Would it have been sufficient to require a writ to issue thereon? An affidavit that the defendants were about to convey or assign their property so as to hinder and delay their creditors, although it had contained all other necessary averments, would clearly not have been sufficient without the addition of the word "fraudulently," or some other equivalent word.

The other assignments of error, in different forms, present for consideration here the action of the court below in its finding on the evidence. Those assignments are as follows: "The plaintiff in error assigns for error in the above entitled cause—Second, the finding of the district court in favor of the defendants on the issue raised by the traverse of the allegations of the affidavit for attachment; third, the judgment of the district court in favor of the defendants on said finding; fourth, the overruling of the motion of plaintiff in error for a new trial on said issue."

The evidence in the court below is all in the record, and has been carefully examined and considered. If this court were required to weigh the evidence, and determine whether the finding below was in accordance with the weight of the evidence, then it would be well to consider the testimony of each witness separately on all material points, and to set out the evidence at consider-

FINDING: weight of evidence on appeal.

able length in this opinion, but, as the rule is to the contrary, no good purpose will be accomplished by such recital. It is apparent from this evidence that the defendants were men of limited means, and known to be so by the plaintiff. They had his confidence to such an extent that, according to his own evidence, the plaintiff permitted them to select at their own will out of his stock such goods as they desired, and themselves to fix the price. Such confidence is not usually reposed in men unless they have a good record for honesty and fair dealing. Starting in business entirely on credit, which was known to plaintiff, it could not be expected that within three months they would be full-handed. If, under such circumstances, at the expiration of three months, they were not somewhat pressed for ready money it would be unusual. The defendant Trorlicht swears that every dollar received out of the sale of goods, after board bills and necessary running expenses were paid, was applied to the payment of debts, and there is nothing in the evidence to dispute his statement. Even if they had not exhibited good business judgment, so long as they did the best they could, and acted honestly, an intention to defraud would not be thereby proven. The evidence proves that they became pressed for present money; that in such emergency they consulted a lawyer, and wrote to the plaintiff offering to assign to him. This letter bears date may 2d. The affidavit in attachment bears date two days later, to wit, May 4th. The plaintiff, as he swears, after receiving this written offer to assign to him, caused the affidavit and necessary papers to be filed in the attachment proceeding, and then went to see the defendants. He says: "I looked over the business of the house, and saw the way the thing was running, and I left the house with the impression I would not make an attachment; went home with that intention." It would seem from this that the examination

was satisfactory to him. He went there, carrying with him the defendants' written offer to assign to him. It is but reasonable to conclude that at this conference the whole subject of their indebtedness and ability to pay was talked over. As a result of plaintiff's examination into their affairs, he left their place of business satisfied, and to that time evidently had made no direction to attach. Mr. Trorlicht testifies that the plaintiff came to the store, examined the books, and seemed perfectly satisfied. Says Trorlicht: "He told us to come to Albuquerque, and buy more goods if we wanted to. Torlina said: 'Boys, there is no use of your making an assignment.'" Plaintiff does not deny that all this occurred. Even if defendants were thinking on the second day of May of making an assignment, they communicated that fact to plaintiff,—if not their only creditor, by far the largest one. Several days must have intervened, and it would seem that the idea of an assignment was abandoned after the conference, and while the plaintiff yet held control of the writ, and before its levy. In the talk at the store, before the plaintiff ordered a levy made, he said to them there was no need that they should make an assignment. To this defendant assented, and says he had no further intention at all to assign. The plaintiff was paid in cash $90, and some goods, and left for his home, having abandoned the intention of making the attachment. What induced him to change his mind and perfect the attachment by a levy on the goods? Plaintiff answers that question in his own evidence. He says: "I left the house with the impression I would not make the attachment,—went home with that intention; but I found another party that was going to make another attachment,—jump in ahead,—and the condition of their stock was of such a nature that they could not pay a hundred cents on the dollar at the best, if they would, and I concluded I had better serve the attachment,

which I did the next day following. * * * I concluded, if any other creditor might step in, I would not be left, and would secure myself if I could.''

In this state of the evidence, it would not be a strained or unreasonable conclusion that it was the fear that some other creditor would, by a prior attachment, secure a first lien on the goods, which induced the plaintiff to make his attachment. In the conference between the parties before the levy, there is not the slightest evidence that defendants concealed any fact, made any misrepresentation, or were in any way unwilling to turn over voluntarily to plaintiff the whole stock of goods in payment of their debt, or that they were asked to do anything and refused. They had promptly informed plaintiff of their embarrassment, and tendered to him an assignment. There is strong ground to believe they were acting in the best of faith, and much evidence in the record tending to support the finding of the court. This court is not required to examine into the finding to determine whether it should not have been for the other party on the weight of the evidence. The rule here is otherwise. The supreme court of this territory in Zanz v. Stover, 2 N. M. 29, said: ''The court having acted in this case as a jury, so far as its decision on questions of fact is concerned, its verdict should not be set aside, nor the judgment thereon reversed, in a case where there is any evidence whatever on which it could be based.'' In this case, the finding of the court should be held to occupy the same place as would the verdict of a jury, and the same rule which in the supreme court would be applied in reviewing there the verdict of a jury should be applied to the finding of the court where a jury is waived by stipulation, and the court determines the case below on the weight of the evidence while sitting in the place of a jury. The rule is well settled that the supreme court will not disturb the verdict of a jury,

where there is any substantial evidence to support it. To that effect are the following cases: Crolot v. Maloy, 2 N. M. 198; Vasquez v. Spiegelberg, 1 N. M. 464; City of Richmond v. Smith, 15 Wall. 429; Bond v. Brown, 12 How. 254; Waldo v. Beckwith, 1 N. M. 97; Archibeque v. Miera, Id. 160; Ruhe v. Abren, Id. 247.

When the foregoing rule is applied, and it is further considered that when the charge is fraud it must be clearly and fully proven in the trial court, the duty here would seem to be a plain one. Kerr, Fraud & M. 382-384, says: "A man who alleges fraud must clearly and distinctly prove the fraud he alleges. * * * If the fraud is not strictly and clearly proven, as it is alleged, relief can not be had, although the party against whom relief is sought may not have been perfectly clear in his dealings. * * * The law in no case presumes fraud. The presumption is always in favor of innocence, and not of guilt. In no doubtful matter does the court lean to the conclusion of fraud. Fraud is not to be assumed on doubtful evidence. The facts constituting it must be clearly and conclusively established. Circumstances of mere suspicion will not warrant the conclusion of fraud." In weighing the evidence, the trial court, no doubt, had in mind the foregoing principles, and the effect of the finding there is that the conclusion of fraud does not clearly follow from the evidence. It is not the duty of this court to disturb the finding. No error is found in the record, and the judgment below is affirmed.

HENDERSON and REEVES, J. J., concur.