## HILL et al. v. WABASH RY. CO. *

(Circuit Court of Appeals, Eighth Circuit. August 28, 1924.)

No. 6310.

**1. Trial ⬡3—Granting separate trials on issues discretionary under Missouri statute.**

Under Rev. St. Mo. 1919, § 1401, giving the court power to direct separate trials on the issues in a case, as the statute is construed by the Supreme Court of the state, the granting of separate trials is discretionary with the trial court.

**2. Courts ⬡366(1), 374—Questions of procedure in actions at law governed by state decisions.**

In matters of procedure in an action at law, which involves no federal question, the federal courts are governed by the statutes of the state as construed by its highest court.

**3. Appeal and error ⬡1053(4)—Attempt to introduce immaterial issue held not prejudicial.**

The facts that an answer, read to the jury without objection, alleged as one defense that plaintiffs had assigned the cause of action and were not the real parties in interest, and that one witness was asked a question as to insurance which was excluded, held not prejudicial to plaintiffs, where the jury were plainly instructed that such question had no bearing on the case and was not before them.

**4. Trial ⬡413—Error in exclusion of evidence cured by reversal of ruling.**

Error in excluding evidence offered held cured by subsequent reversal of the ruling and an offer to permit introduction of the evidence offered.

**5. Witnesses ⬡269(1)—Limiting cross-examination to scope of direct examination not error.**

There is no abuse of discretion in not permitting cross-examination of a witness to extend beyond the scope of the direct examination.

**6. Appeal and error ⬡1050(1)—Admission of evidence held not prejudicial.**

The admission in evidence of a conversation between two witnesses, if erroneous, held not prejudicial, where the facts to which it related and other evidence concerning such conversation were before the jury.

**7. Trial ⬡96—Motion to exclude all the testimony of a witness, some of which is material, properly overruled.**

A motion to strike all the testimony of a witness, where some of it is material, is not sufficient to reach the immaterial testimony sought to be eliminated.

**8. Trial ⬡312(2)—Recalling and further instructing jury held not reversible error.**

Recalling a jury which had been out for 6½ hours without agreement, and instructing them that they should give proper regard and deference to the opinions of each other, and that if much the larger number were in favor of one party a dissenting juror should consider "whether his doubt was a reasonable one, which

*Rehearing denied November 24, 1924.

made no impression upon the minds of so many men equally honest, equally intelligent, with himself," *held* not reversible error.

**9. Trial ☞312(1)—Time within which jury may properly be recalled and further instructed rests in sound discretion of trial judge.**

The time which should be permitted to elapse after a jury has retired before recalling them for further instructions on the matter of reaching an agreement rests in the sound discretion of the trial judge, and unless there is an abuse thereof it is not subject to review.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by Archibald M. Hill and William L. Behan, partners as the Hill-Behan Lumber Company, against the Wabash Railway Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Walter H. Saunders, of St. Louis, Mo. (Wilfley, Williams, McIntyre, Hensley & Nelson and Leahy, Saunders & Walther, all of St. Louis, Mo., on the brief), for plaintiffs in error.

Homer Hall, of St. Louis, Mo. (N. S. Brown and L. H. Strasser, both of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENYON, Circuit Judge. Plaintiffs in error instituted action in the circuit court of the city of St. Louis, Mo., against the Wabash Railway Company for damages in the sum of $61,240.72, arising from the destruction of a certain stock of lumber, a planing mill, machinery, and equipment, lumber sheds, fence, railroad switch, and other property, of which they were the owners, situated on a tract of land adjacent to the right of way of the Wabash Railway Company, in the city of St. Louis, Mo. It was claimed that the same were destroyed by a fire communicated by a locomotive engine used by the railway company upon its railroad. The action is predicated on the Missouri statute with reference to responsibility of a railroad corporation for damages caused by fires commenced from its locomotive engines.

Defendant in error denied its responsibility for the fire, and further claimed in its answer to the amended petition that the plaintiffs in error had been fully compensated for whatever claim or right of action they might have had against the defendant in error on account of the fire, and had transferred and assigned such claims to certain persons and insurance corporations not entitled to sue thereon; that plaintiffs in error were not the real parties in interest, and were not entitled to maintain the suit on behalf of themselves or said corporations.

The case was removed by defendant in error to the United States District Court for the Eastern District of Missouri, Eastern Division, and there tried. The jury returned a verdict for defendant in error, and judgment was duly entered thereon.

Various assignments of error are urged. Assignments 1 and 8 may properly be considered together, as the ultimate question involved in each is the same, viz. the effect upon the jury of the attempt to get before them the fact that the insurance companies had paid the loss, and that the contest in the court was really between such companies and the railway company. Plaintiffs in error argue very earnestly that this situation prejudiced them and prevented a fair trial, and that, notwithstanding the charge of the court, which sought to eliminate any impression created concerning parties in interest, the damage done was not remedied.

The first error assigned relating to this is the failure to sustain the motion for a separate trial upon the issues raised by defendant in error in its answer as follows: "That before the commencement of this suit the plaintiffs sold, transferred, and assigned whatever claim or right of action they might have had against the defendant on account of the fire mentioned in the petition to certain persons and corporations, and the plaintiffs are therefore not the real parties in interest in this suit, and not entitled to maintain this suit." The eighth assignment alleges the error that defendant in error was permitted to introduce evidence of the fact that plaintiffs in error carried insurance on the property destroyed and were reimbursed for said loss by the insurance companies.

The motion for separate trial was not made, considered, or ruled on in the presence of the jury. At the commencement of the trial the amended answer was read to the jury without objection, and in this way it was apprised of the claimed defense that the cause of action had been assigned. Later in the trial the following took place with reference to this matter (witness Hill upon the stand):

"Q. Mr. Hill, your property was insured, was it not?

"Mr. Williams: We object to that, if the court please. We don't think it is proper."

The court promptly sustained the objection. The reading of the answer to the amended petition and this question asked the witness Hill were apparently the only attempts made to get before the jury the question as to insurance companies having an interest in any recovery. There was evidently no argument on this subject to the jury, or reference thereto, or the record would have so shown. The court endeavored to guard this question carefully in its instructions, evidently believing that such question, under the record made, should not in any way be before the jury, saying to them:

"Something was said in the answer, and perhaps some evidence came in, from which you got the idea that this loss, either in whole or in part, was covered by insurance. I charge you that, under the law and the facts in this case, it does not make any difference whether it was covered by insurance or not. I need not go into the reason or the intricate law which governs this conclusion touching which I charge you so definitely, because it might obscure the issues and give you trouble. I merely say to you that, under the law and the evidence in this case, I charge you as a matter of law, that you are not to consider at all, or at any length, or for any purpose, the fact whether there was insurance or not. With that fact, whether it existed or did not exist, you have utterly nothing to do under the issues here, under the law here, and under the facts here."

[1] This action arose and was tried in the state of Missouri. Section 1401, Revised Statutes of Missouri 1919, provides as follows: "Where there are several causes of action united in a petition, or where there are several issues, and the court shall be of the opinion that all or any of them should be tried separately by the court or jury, it may, on the application of either party, direct separate trials." This statute has been construed by the Missouri courts as placing a discretion in the trial court as to whether the issues in a case shall be tried separately.

In Sexton v. Anderson Electric Car Co. (Mo. App.) 234 S. W. 358, 359, the court said: "In the case at bar, there is no claim that there is more than one cause of action, but two issues clearly were raised by the pleadings: First, as to whether Sexton is the proper party plaintiff; and, second, the controversy on the merits of the case. The clear intent of the statute is to prevent confusion in deciding the several issues. The statute is not mandatory, the granting of separate trials thereunder is purely within the discretion of the court, and this discretion will not be reviewed unless it clearly appears it has been abused." See, also, Smith v. Baer, 166 Mo. 392, 66 S. W. 166; Stone v. Perkins, 217 Mo. 586, 117 S. W. 717.

[2] Being a matter of procedure under the Missouri statute, and no federal question being involved, the construction of the statute by the appellate courts of Missouri is controlling. Pacific American Fisheries v. Hoof (C. C. A.) 291 Fed. 306; Richmond v. Smith, 15 Wall. 429, 21 L. Ed. 200; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 33 Sup. Ct. 967, 57 L. Ed. 1410; Colorado Power Co. v. Halderman (D. C.) 295 Fed. 178; Georgia Ry. & Power Co. v. Decatur, 262 U. S. 432, 43 Sup. Ct. 613, 67 L. Ed. 1065. It is the evident holding of the Missouri courts that under the section of the statute hereinbefore referred to the granting of a separate trial, where more than one issue is presented in a case, is a matter resting in the discretion of the trial court, and in the absence of abuse thereof there is no review.

In this case there could be no abuse of discretion in the court's action refusing to separate the issues for trial, unless such action of necessity resulted in getting before the jury improper matter creating an erroneous impression, that could not be eradicated by the instructions of the court or the withdrawal of the same from the consideration of the jury. The objection of plaintiffs in error is not so much to the technical ruling refusing a separate trial as to the claimed result that such action created the possibility of getting before the jury alleged prejudicial matter, and that such possibility was realized.

[3] It is earnestly urged that the jury was saturated with the idea that the controversy in the case was between the railway company and the insurance companies. We think such claim is not sustained by the record. The answer, as before stated, to the amendment to plaintiffs in error's petition was read to the jury. The statements of this answer, however, were not facts in evidence. The question asked of witness Hill with reference to insurance on the property was not answered, the objection thereto being sustained. Under the theory of the case adopted by the court, such question was improper, and should not have been asked, and, had such questioning been persisted in with the evident intent to get improper evidence before the jury, it would warrant seri-

ous attention by an appellate court. The question, however, was asked but once, and of but one witness. The matter was not again referred to anywhere before the jury in the trial, except in the instructions of the court, and no evidence whatever on the subject was introduced over the objection of plaintiffs in error, who seem to feel that the asking of the question of Hill as to insurance and the reading of the answer created the same effect as if the evidence was actually introduced.

Plaintiffs in error do not question the general rule that error in the introduction of evidence is cured by the withdrawal of the same by the court before the conclusion of the trial or by a clearly presented instruction to the jury to disregard it, as held in Penn. Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; Waldron v. Waldron, 156 U. S. 361, 15 Sup. Ct. 383, 39 L. Ed. 453; Maytag v. Cummins, 260 Fed. 74, 171 C. C. A. 110, 16 A. L. R. 712. The Supreme Court, in Throckmorton v. Holt, 180 U. S. 552, 567, 21 Sup. Ct. 474, 480 (45 L. Ed. 663), expresses the same as follows: "The general rule is that, if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, such direction cures any error which may have been committed by its introduction."

Reliance is placed on the exception to the general rule that an error in permitting a matter to come before the jury may be so deep-seated that it cannot be cured by an instruction of the court, and hence would constitute reversible error. In Maytag v. Cummins, 260 Fed. 74, 171 C. C. A. 110, 16 A. L. R. 712, this court stated it as follows: "But there is an exception to this rule. It is that, where the Appellate Court perceives from an examination of the record that the inadmissible evidence made such a strong impression upon the minds of the jury that its subsequent withdrawal or the instruction to disregard it probably failed to eradicate the injurious effect of it from the minds of the jury, there the defeated party did not have a fair trial of his case, and a new trial should be granted."

In Throckmorton v. Holt, supra, the court said: "But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error." In this case evidence of several witnesses was given on the point in dispute "after much opposition and long argument as to its admissibility." Undoubtedly there may be instances where incompetent or immaterial evidence admitted over objection may create such an impression upon the minds of the jury that an attempt of the court in its instructions to eradicate such impression is unavailing. The attempt to withdraw such evidence from the consideration of the jury may be like the attempt to recall a bullet that has been shot. The damage ofttimes cannot be repaired and the fairness of the trial is destroyed.

We think this case does not present any such situation as discussed in the various cases cited. As plaintiffs in error did not object to the reading of the answer, there is no basis for complaint as to any statements therein. Besides, such statements are not evidence. The mere asking of the question of witness Hill, with no answer thereto, is hardly sufficient to sustain a claim that the trial was permeated with the idea that the contest was between the insurance companies and the railway company. Further, whatever impressions may have been created by the question to Hill in connection with the reading of the answer was eliminated by the very careful, emphatic, and clear instruction of the court on the subject.

Assignments of error 2 and 3 refer to the action of the court in sustaining objections to questions asked the witness Kaiser. The complaint of assignment of error No. 2 is that the court sustained an objection to a question asked said witness as follows: "Now, between the plant and the right of way, is there any grass, or was there grass, in 1917, and prior to that?" The court, in sustaining the objection that it was incompetent and too remote, said: "There is no use confusing the issues hereby showing what were the surroundings of the Wagner Electric plant, because they are not suing, unless you are going to connect it up by showing that fire got off the right of way over to the Wagner plant, and was thence communicated to their plant, but I don't understand that to be your theory." To which counsel for plaintiffs in error replied: "No; that is not the theory. I am simply trying to show what had occurred on times theretofore with reference to some of these plants being adjacent." We see no particular harm resulting from this ruling of the court, nor would there have been any in permitting the question to be answered. There was

plenty of evidence in the record of grass being along the right of way to which a fire might have been communicated, and the fact that there was grass along the Wagner Electric plant property on the east side of the railway in the year 1917, and prior thereto, was not a circumstance of vital importance.

[4] As to assignment of error No. 3, plaintiffs in error made an offer to prove the following: "I offer to prove by this witness that, at numerous times while he was in the employ of the Wagner Electric Manufacturing Company, whose property is situated along the right of way of the Wabash Railway, the defendant herein, a distance of 2,600 feet in the vicinity of the plant of the plaintiffs herein, he (this witness) was called upon to extinguish fires along the right of way of the defendant, which fires were caused by sparks flying from the locomotives of the defendant, and that he has frequently observed sparks being emitted by the locomotives passing along, in front of, and adjacent to and parallel with the property of the Wagner Electric Company." Objection being made it was sustained by the court.

It was urged by counsel that this ruling of the court was error under the decision of the Supreme Court, in Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 169. We agree with this contention, but the error was cured by the subsequent action of the court. After the ruling sustaining the objection and during the trial the court reversed his former ruling and stated with reference thereto: "The court was of the opinion then (which has been confirmed) that the matter was one about which courts have greatly differed, and I announced, in effect, that I was aware that they differed, but that my view personally was that the evidence was inadmissible. On looking into it I found that a court superior to this one, whose decisions are binding upon this one, has held against you, so if plaintiffs desired to offer, and can offer, any evidence that immediately before, but not at the same time that the fire occurred in this case, engines moved by the defendant along that road adjacent to or adjoining the property of the plaintiffs, scattered sparks and fire, I shall permit them to do so under the authority of the case of Grand Trunk Railway Company v. Richardson et al., 91 U. S. l. c. 470, where the point is passed on squarely, construing a statute substantially similar, if not the ancestor entirely, of the one involved here." The door was thus opened to the plaintiffs in error to show

that the engines moved by defendant in error along its track adjacent to its property scattered sparks and fire. It may be noted that evidence was introduced showing the emission of sparks before the time of the fire by the locomotive of the train claimed to be responsible for the same. The error of the court in its first ruling was completely cured by its subsequent action.

[5] The fourth assignment of error, not being argued, is waived (Braden v. U. S. [C. C. A.] 270 Fed. 441), and we pass to the fifth, which refers to the action of the court in sustaining objection to a question asked on the cross-examination of witness Leffman, as follows: "And how many fires did you discover along that right of way of the Wabash?" On direct examination the witness had been asked only as to the fire which he saw in plaintiffs in error's lumber yard the evening the property was destroyed. There was no abuse of discretion on the part of the court in not permitting the cross-examination to extend beyond the scope of the direct examination. To have permitted the same might have been error. Minnesota & Ontario P. Co. v. Swenson Ev. Co. (C. C. A.) 281 Fed. 622; Wilkes v. U. S. (C. C. A.) 291 Fed. 988; Camp Mfg. Co. v. Beck (C. C. A.) 283 Fed. 705. Further we may suggest that no exception was taken to the ruling of the court on this question. Hence the same is not properly before us.

[6] The sixth assignment of error raised questions as to the ruling of the court permitting the witness Swofford to testify as to what witness Terry had stated to him concerning the fire. The question and answer are as follows: "Q. Mr. Swofford, Mr. Terry has testified with reference to information given you as to what he observed of a fire in the Hill-Behan yard. You may tell the jury what he said to you at the time. * * * A. Well, as we were passing the extreme north end of the lumber yard, Mr. Terry said to me: 'I saw a little fire back there at the edge of that lumber yard.' I said: 'You did? What did it look like?' He said: 'Oh, it was a little fire.' About that time we were going on, but I stepped over to his side to see if I could see anything of it. I didn't see anything of it, and I stepped back in my place, and I got to thinking that was awful close to a lumber yard, awful—" The court was of the opinion that witness Swofford could testify as to what Terry told him, on the theory that it was a part of the res gestæ. Whether admissible under the theory of res ges-

tæ is a debatable question. It is unnecessary to determine it, because under the condition of the record there could have been no prejudice whatever to plaintiffs in error in permitting the witness, Swofford, to state what Terry told him. The record discloses the following situation: Terry had testified fully as to seeing the fire at the edge of the lumber yard. The court permitted him also to testify that he communicated information of what he saw to Swofford but did not permit him to relate the conversation. Plaintiffs in error saved no exception to the ruling of the court on this question. Hence the jury had before them the facts that Terry related as to seeing the fire in the lumber yard. Further, they had before them the fact that Terry had communicated to Swofford what he had seen. For Swofford, therefore, to relate what Terry had told him conveyed no new information to the jury. The matter was all before them, and the relation of it was merely cumulative, and, if erroneous, was therefore without prejudice.

[7] The seventh assignment of error is with relation to the overruling of plaintiffs in error's motion to strike from the record the entire testimony of defendant in error's witness, Herring, with reference to the condition of the locomotive on October 16, 1917. It is sufficient answer to this to say that the motion sought to strike out all of the testimony of the witness, when some of it was clearly competent and material. It is an elementary proposition of practice that objections to testimony en masse are not available, nor is a motion to strike all the testimony of a witness, when some of it is material, sufficient to reach the immaterial evidence sought to be eliminated. The court must be advised by the motion of the specific evidence sought to be reached, and unless so advised is not required to scan the entire evidence, and segregate the material from the immaterial.

[8] The ninth assignment of error relates to the following instruction given by the court, the jury being recalled after it had retired and had been out over six hours: "The court further instructs you that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet you should examine the questions submitted with candor, and with a proper regard and deference to the opinions of each other; it is your duty to decide the case, if you can conscientiously do so; you should listen with a disposition to be convinced to each (other) oth-

er's arguments; if much the larger number are for one party, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men equally honest, equally intelligent, with himself. If, upon the other hand, the majority are for the other party, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."

Counsel's main argument for reversal is based on the action of the court in giving this instruction, which is termed a "mandatory instruction." This instruction, or similar ones, have been the subject of considerable discussion by the courts. The particular instruction in this case is substantially the same as the one approved by the Supreme Court in Allen v. United States, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528, and is somewhat similar to the ones approved in Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91, Shea v. United States, 260 Fed. 807, 171 C. C. A. 533, and Suslak v. United States, 213 Fed. 913, 130 C. C. A. 391.

This court, in St. Louis & S. F. R. Co. v. Bishard, 147 Fed. 496, 15 Sup. Ct. 36, 500, 78 C. C. A. 62, 66, said: "The proper limits of the authority of a trial court when a jury is having difficulty in reaching a verdict were expressed by the Supreme Court in Allis v. U. S., 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91, in Allen v. U. S., 164 U. S. 492, 501, 17 Sup. Ct. 154, 41 L. Ed. 528, and in Burton v. U. S., 196 U. S. 283, 307, 25 Sup. Ct. 243, 49 L. Ed. 482. It is true these were criminal cases, but we know of no reason why their doctrine is not equally applicable to cases of a civil character. * * * We are of the opinion that error was committed in the case at bar in the inquiry of the foreman of the jury as to their division and in the succeeding charge. The charge itself was not sufficiently guarded. Its tendency was to bring the one juror to an agreement with the others, even against the dictates of his own judgment."

In the Allis Case in the trial court the instruction was given by Judge Sanborn. The jury had been out 24 hours, and apparently were unable to agree. The words, "equally honest, equally intelligent with himself," complained of here, are used in Judge Sanborn's instruction. The Supreme Court referred to this charge and said it was eminently fair. In that case the court, speaking of recalling a jury after they had been deliberating for some time for the purpose

of assisting them in the solution of their difficulties said: "It would be startling to have such action held to be error, and error sufficient to reverse a judgment." It may be noted that in the Allen Case, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528, from which the instruction here was apparently taken, the same words objected to, viz. "equally honest, equally intelligent with himself," are used.

In the case of Burton v. United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482, the Supreme Court condemned the practice of asking the jury how they were divided, and said: "All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division, and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge."

In Peterson v. United States, 213 Fed. 920, 925, 130 C. C. A. 398, the Circuit Court of Appeals of the Ninth Circuit held the language of such instruction to be coercive in its spirit and its tendency. The court used the language in the instruction, "The government has a right * * * to a verdict without farther expenditure of time and money," and the instruction in closing said that the jurors could, in the belief of the court, "honestly come to an agreement."

From these decisions the conclusion is apparent that the court has the right to attempt to assist the jury by proper instructions in reaching a verdict without intruding on the fundamental right of the jury to determine fact questions. The court has no right to coerce a jury into a verdict, or to attempt to do so. The important thing in a case is not the mere agreement of the jury, but the correct determination of the issue involved. All parties to the controversy are entitled to the uncoerced judgment of the jurymen, and the test of such an instruction as herein complained of is whether it is in fact an attempt to assist the jury or to coerce them. If it is an attempt to break down the individual judgment and honest conviction of a juryman in order merely to reach a verdict, it is erroneous; but if it is an admonition or request to the jury to reason together, to consider one another's views, and attempt to reach a conclusion, it is entirely proper. Some of the courts, out of an abundance of caution, guard the matter by including in such an instruction a statement that the minority jurors are not required to yield their honest conviction for the sake of reaching a verdict. Courts should be careful not to infringe upon the jury's prerogatives as triers of fact questions, and not attempt to induce jurors to give up their individual judgment on a fact question by creating the impression that such is the desire of the court. Similar instructions to the one in question here have been approved, as we have pointed out, by the Supreme Court and the federal courts quite generally.

The instruction must be taken also in connection with the other instructions of the court. The jury were told in such instructions that they were the sole judges of the testimony of the witnesses, and this language was used: "If what I say agrees with your views, you are at liberty to follow what I say. If you do not agree with me, it is not only your privilege, but your duty, to follow your own consciences and convictions, and utterly set at naught what I shall say." The instruction was not objectionable as to substance or form. There was no attempt by it to coerce any juryman into agreement to a verdict by a surrender of his individual conviction.

[9] The question remains: Was it error to give it within such a short space of time after the case had been submitted to the jury? It is pointed out by counsel for plaintiffs in error that such instruction has never been given where the jury had only been out for 6½ hours. We have been unable to find, after a somewhat diligent search, any case where the space of time was as short as here. Of course, the court must wait a reasonable time before giving such instruction; but we think the mere matter of time is not of controlling importance. In the Allis Case in the Supreme Court, hereinbefore referred to, that court said: "The time at which such a recall shall be made, if at all, must be left to the sound discretion of the trial court, and there is nothing in the record to show that the court, in the case at bar, abused this discretion, or failed to wait a reasonable time for the consideration of the case by the jury under the charge as already given."

The trial court has better knowledge of all the circumstances surrounding a case than an appellate court. It will not be presumed that the trial court is sacrificing justice to speed. The question of when such instruction shall be given is a matter resting within its sound discretion, and unless there is abuse thereof, it is not the subject of review. While the time here was less

than in any of the cases reviewed, where such instruction has been given, and while it may have been slightly premature, we are not prepared to say that it was an abuse of discretion.

We find nothing in the various assignments of error to warrant a reversal of the judgment entered by the trial court, and the same is affirmed.