WILLIAM J. MAHONEY *vs.* CITY OF BOSTON.

Suffolk.   March 7, 1898. — June 22, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Liability of City of Boston to Employee injured in Construction of Subway.*

It is a defence to an action against the city of Boston, under the employers' liability act, St. 1887, c. 270, and acts in amendment thereof, for personal injuries occasioned to a person at work on the subway authorized by St. 1894, c. 548, that the work was a public one over which the defendant had no control, but which was in charge of the transit commissioners, who were public officers engaged in the performance of public duties, and independent of the defendant, and not its servants or agents.

TORT, for personal injuries occasioned to the plaintiff by the fall of a derrick while he was at work on a section of the subway in the city of Boston. The declaration was under the employers' liability act, St. 1887, c. 270.

Trial in the Superior Court, before *Maynard*, J., who ruled that the action could not be maintained, and directed a verdict for the defendant. The plaintiff alleged exceptions, and the judge reported the case for the determination of this court. If the ruling was right, the verdict was to stand; otherwise, it was to be set aside, and a new trial granted.

The case was argued at the bar in March, 1898, and afterwards was submitted on briefs to all the justices.

*W. B. Grant*, for the plaintiff.

*F. E. Hurd*, for the defendant.

MORTON, J. The plaintiff was injured by the fall of a derrick while he was at work on a section of the subway in Boston. The management of the derrick was under the direction of one Daniels, a foreman, and there was evidence that his sole or principal duty was that of superintendence, that the fall of the derrick was caused by his negligence, and that the plaintiff was in the exercise of due care. The plaintiff was in the employ of the Boston Transit Commission, and he and the others who were at work on the section, and all the expenses of construction, were paid on bills and pay-rolls which were approved by the commission, out of the proceeds of $3\frac{1}{2}$ per cent bonds issued by the city of Boston, under St. 1894, c. 548, § 37. The commission was building this section under that statute, and, with the approval of the railroad commissioners, has leased the subway to the West End Street Railway Company for twenty years, to begin when determined by the transit commission, at a yearly sum of $4\frac{7}{8}$ per cent on the actual net cost of the subway, payable to the city of Boston, and to be applied by it in accordance with St. 1894, c. 548, § 38. That section provides that all rents received for the use of the subway shall be used, "first, to meet any deficiency in the sinking fund requirements for said bonds, after the payments hereinbefore provided for have been made; second, to meet the interest on said bonds, and the surplus, if any, as a part of the general revenue of said city for the maintenance of its public parks."

Inasmuch as the city of Boston is to pay all of the costs and expenses of such subways as the commission may construct, and of such lands and rights as it may take under the authority of the act, and is to receive all rents, percentages, or other annual compensation paid for the use of them, we assume, without deciding, that the subways and such lands and rights will belong to the city. But neither that fact, nor the fact that some members of the commission are appointed by the mayor and confirmed by the aldermen, will necessarily render the city liable. The question is whether the work is a public work and the commissioners are public officers charged .with the performance of public duties in carrying it out, or whether the work, though public, is partly commercial in its character and for the benefit of the city of Boston, and in performing it the commissioners act as its servants or agents. It is only in the latter event that the city is liable for the negligence of the foreman. The case of *Prince* v. *Crocker*, 166 Mass. 347, would seem to go far towards determining that the work is a public work. Though the point was not directly adjudicated in that case, the decision proceeds on the assumption that the work was in its nature a public work.

Independently, however, of that case, we think that the work must be regarded as a public work, the expense of which the Legislature has imposed on the city of Boston, as it rightfully could do, and for the doing of which it has provided agents, appointed in part by the Governor and Council and in part by the mayor and aldermen of Boston. The object is to promote the convenience of the inhabitants of Boston, and of the public generally, by furnishing increased accommodations for public travel. The commission constitutes in effect a special board, established by the Legislature for the purpose of laying out and building in the city of Boston at the expense of that municipality public ways along certain lines and between certain termini, and for that purpose it is given large powers and is rendered independent of any control or direction on the part of the city of Boston. The city authorities have nothing to do with the manner in which the work shall be done, or with the persons engaged in its performance; they have no control over the transit commissioners, and no voice in fixing the terms and

rates for the use of the subway when completed, or any part thereof. Although the act did not take effect until accepted by the city, that does not render the city liable. *Tindley* v. *Salem*, 137 Mass. 171. There can be no doubt, we think, that the members of the transit commission are public officers engaged in the performance of public duties, and we do not see how they can be regarded as the servants or agents of the city.

But assuming that they could be regarded as in some sense the servants of the city, we think that the element of commercial advantage, or pecuniary benefit to the city, is not such as to render it liable for the negligence of the foreman. As already observed, the work is intended to promote the convenience of the public generally. The statute requires the city to apply any rents or compensation which it may receive from the use of any of the "subways, tunnels, or adjacent locations, or for any use of any lands or rights taken under authority" of the act, first, to meet any deficiency in the sinking fund requirements for the bonds; second, to meet interest on the bonds; and third, to use the surplus, if any, as a part of the general revenue of the city for the maintenance of the public parks. The city can use the rent or compensation which it receives only as thus directed. For aught that appears, the Legislature may direct it to be used in some other manner. The city has no general control over it. The undertaking, so far as the city is concerned, lacks the features of one which is partly commercial in its character, and intended for the benefit of the city. The surplus, if any, is to be used for the support of the public parks; in other words, for the general public benefit, which has some tendency to show that the Legislature regarded the work as one of general public utility. The case differs, therefore, from those cases in which it has been held that when a city or town engages in a public undertaking which is partly commercial in its character, and over the construction and management of which it has full control by means of agents or officers appointed or elected by it and the benefits of which it receives, it is liable for injuries sustained in consequence of the negligence of one employed in doing the work, even if it be conceded that for the time being there is a surplus, and that the city is benefited by having it applied to the maintenance of the parks, and being relieved to some extent

from the obligation to raise by taxation money which it other-wise would be obliged to raise. *Taggart* v. *Fall River,* 170 Mass. 325. *McCann* v. *Waltham,* 163 Mass. 344. *Curran* v. *Boston,* 151 Mass. 505. *Norton* v. *New Bedford,* 166 Mass. 48. The benefit is a mere incident of an undertaking which is public in its nature, and is carried out by public officers over whom the city has no control, and no case, we think, has gone so far as to hold a town or city liable under such circumstances.

*Judgment on the verdict.*