## CAUSTEN BROWNE & another *vs.* ALFRED T. TURNER & others.

Suffolk.    January 22, 1900. — March 28, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Boston Subway — Construction of Tunnel to East Boston — Constitutional Law.*

Section 17 of St. 1897, c. 500, authorizing the construction of a tunnel from Boston to East Boston and the execution of a lease of the tunnel, when completed, to the Boston Elevated Railway Company, for twenty-five years from the date of that act, at the rental specified in the same section, and § 18 of the same

statute, authorizing the city treasurer to issue bonds of the city to pay the cost of construction of the incline, etc., and other bonds to a certain amount, the proceeds thereof and of $7,000,000 in bonds authorized by St. 1894, c. 548, to be applied to the payment of the expenses of constructing, etc. the subways authorized by said St. 1894, c. 548, § 25, and of the tunnels, etc. provided for in the preceding section, are not unconstitutional, as calling for an unwarranted exercise of the power of taxation, as taking the property of the city without reasonable compensation or due process of law when a lease, as provided by statute, is executed to the Boston Elevated Railway Company, or as impairing the obligation of a contract already made by the Boston Transit Commissioners with the West End Street Railway.

BILL IN EQUITY, filed November 21, 1899, under St. 1898, c. 490, by ten taxable inhabitants of Boston, to restrain the Boston Transit Commission from constructing a tunnel from the city proper to East Boston, which they were directed to build by St. 1897, c. 500, § 17; and praying that the commission and the city treasurer be restrained from issuing bonds of the city to pay for such construction, and from using for that purpose the proceeds of bonds already issued, as provided in St. 1897, c. 500, § 18, and for general relief.

The provisions of § 17 are substantially as follows: Whenever the corporation is authorized to construct its railroad as provided in § 13 of this act the transit commission is to construct a tunnel or tunnels for two railway tracks with approaches and other facilities, etc., and for the running of railway cars therein "from a point on or near Hanover Street in the city of Boston, or such other point or points as said board may deem proper for a suitable connection with the subway or subways provided for" in St. 1894, c. 548, § 25, "to a point at or near Maverick Square in that part of Boston called East Boston, where a suitable connection with surface tracks may be made," the tunnel or tunnels to be thoroughly constructed, to be water tight, or in case of leakage the water to be taken care of by the city. On completion the commission is to execute a lease to the Boston Elevated Railway Company for a term expiring twenty-five years from June 10, 1897, the date of the act, "at an annual rental equal to three eighths of one per cent of the gross receipts for each year ending September 30, of all lines owned, leased, or operated by said corporation [Boston Elevated Railway Company], to be paid to said city on or before the last day of November in each year, with the privilege to the lessee to sublet the same,

such lease to contain such other terms and provisions as may be agreed on by said commission and said corporation, or in case of disagreement, as shall be determined by the board of railroad commissioners. Said rental shall be in full compensation for the exclusive use of said tunnel by said corporation, its sub-lessees, successors, or assigns." The city is to collect from each person passing through the tunnel a toll of one per cent with provisions as to the reduction thereof, and the whole amount of tolls and rentals is pledged to the payment of the bonds.

The material provisions of § 18 are as follows: The treasurer of the city shall on the request of the transit commission issue and sell by public or private sale bonds of the city to the amount required to pay the cost and expenses of constructing the incline, etc. provided for in § 5 of the act, and of any alterations in sub-ways required under the lease of the subway made by the commission with the West End Street Railway Company, and shall further issue bonds to the amount of $500,000, not to be included in determining the limit of indebtedness of the city, and the proceeds thereof and the proceeds of the $7,000,000 in bonds authorized by St. 1894, c. 548, to be applied to the payment of the costs and expenses of constructing, etc. the subways authorized by St. 1894, c. 548, § 25, and of the tunnels, etc. provided for in the preceding section.

The West End Street Railway Company and the Boston Elevated Railway Company were joined as defendants; the former, because on December 7, 1896, the transit commission, acting for the city of Boston by legislative authority, entered into a contract with the West End Street Railway Company, granting to it the use of the tunnel; and the Boston Elevated Railway Company, because it is the assignee of this contract.* *Lathrop,* J., at the request of the parties, reserved the case on the bill, demurrers, answers, agreed facts, and certain exhibits annexed for the consideration of the full court. The facts appear in the opinion.

*N. Matthews, Jr. & H. L. Harding,* (*W. G. Thompson* with them,) for the plaintiffs.

---

* The statutes which create the transit commission and provide for the construction of subways in Boston and for a tunnel to East Boston are Sts. 1893, c. 478; 1894, c. 548; 1895, c. 440; 1896, c. 492; 1897, cc. 347, 500.

*T. M. Babson*, for the city of Boston.

*S. Lincoln*, for the Boston Transit Commission.

*A. E. Pillsbury*, for the Boston Elevated Railway Company and the West End Street Railway Company.

HOLMES, C. J.   This bill purports to be brought under St. 1898, c. 490, amending Pub. Sts. c. 27, § 129.   As we are of opinion that it fails to make out a case, and as all parties are anxious for a decision upon the merits, we have not considered whether the plaintiffs bring themselves within the purview of the act.   The decree will be the same that it would be if we were against them on the preliminary point, and therefore there seems to be no objection to stating the grounds of substantive law which seem to us to support the result.

The point of the bill may be stated in a few words.   The Boston Transit Commission proposes to obey St. 1897, c. 500, § 17, by constructing a tunnel from a point on or near Hanover Street in Boston proper to a point at or near Maverick Square in East Boston, and by executing a lease of the tunnel, when completed, to the Boston Elevated Railway Company, for twenty-five years from the date of that act, at the rental specified in the same section.   The treasurer of the city proposes to obey § 18 of the act by selling bonds and applying the proceeds to the payment of the cost of the tunnel.   The plaintiffs seek an injunction on the ground that the requirements of these sections are unconstitutional, as calling for an unwarranted exercise of the power of taxation, as taking the property of the city without reasonable compensation or due process of law when the lease is executed, and as impairing the obligation of a contract already made by the subway commissioners with the West End Street Railway.

In view of the decisions as to the subway, it does not appear to us to need further argument to show that the contemplated tunnel, even if permanently confined to street railway travel, is a public work for a public use, for building which the Legislature can require the city to pay.   *Prince* v. *Crocker*, 166 Mass. 347, 361.   *Mahoney* v. *Boston*, 171 Mass. 427, 429.   Local precedent is more important than abstract theory in determining this question, at least so far as the State Constitution is concerned; and if it be true, as it may be, that the difference between uses which are public within the requirements of the

Constitution and those which are not is one of degree, that is no novelty, and it is enough that this use has been determined to fall on the right side of the line. Apart from the distinctions suggested between the subway and the tunnel, which do not impress us, it is said that, because of the direction to let the tunnel, and because of the difference between the rental under the statute and that which would have been received under the contract which we have mentioned, the real object of the statute is to throw upon the city the burden of constructing part of its road-bed for a private corporation and to give it a lease on easier terms. We cannot accept the suggestion. It does not appear that the statute will have either effect. But if it will, so long as it is possible we are bound to assume that the Legislature did its duty, meant what it said, and regarded the work as a public work really needed by the public, as it may be. The purpose of the act on its face is to create a lawful public improvement.

The lease comes up in another aspect, however. It is said that the compensation to the city is inadequate, and that the lease will be a taking of the city's property for a private corporation without paying for it. *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509. With regard to the former proposition, if the Legislature has the same power that it has with regard to other roads, the matter of compensation is wholly within its power. *Norwich* v. *County Commissioners,* 13 Pick. 60. *Agawam* v. *Hampden,* 130 Mass. 528, 530, 531, and cases elsewhere in this judgment. See also *Mobile* v. *Kimball,* 102 U. S. 691, 702 ; *Williams* v. *Eggleston,* 170 U. S. 304. Commonly, when a city or town is required to build a road or bridge within its limits, no compensation is provided for beyond the local benefit of having it there. With regard to the latter branch of the objection, we are of opinion that the case is not like *Mount Hope Cemetery* v. *Boston,* or that supposed of an act requiring a transfer of the city hall to a railroad company for a station. This is not a transfer, but only a temporary and *quasi* experimental lease for a not unreasonable time. The property of the city in the tunnel, assuming it to have a property, is not of a half private sort, as in case of a cemetery, but is merely the control of a public agency. There is no element of the Mount Hope Cemetery case about the matter. *McHugh* v. *Boston,* 173 Mass. 408. *Commonwealth*

v. *Fitzgerald*, 164 Mass. 587, 589, 590. *Kingman, petitioner*, 153 Mass. 566, 574, 575. *Cheshire* v. *Adams & Cheshire Reservoir Co.* 119 Mass. 356. As was said at the argument, if the tunnel is to be built it is to be used, and naturally will not be used by the city directly. If the Legislature could authorize it to be let on terms to be agreed upon, as was held in *Prince* v. *Crocker*, it could require it to be let upon terms which the Legislature thought just, to a corporation selected by itself engaged in a public work like that for which the tunnel is to be used. In fact, when once the power to require the tunnel to be built is conceded, the rest follows, in the situation now existing in Boston. Assuming that the city is not to go into the transportation business further than it has gone, the use of the tunnel by the corporation which manages the consolidated street railways of the city is the alternative, and such use is not to be expected without a lease.

The contract the obligation of which it is said will be impaired is the former lease of the subway executed by the transit commissioners under Sts. 1893, c. 478 ; 1894, c. 548 ; 1895, c. 440 ; and 1896, c. 492. This lease was to the West End Street Railway Company, to whose rights the Elevated Railway Company has succeeded, but was at a different rental from the present. The lease declares the word " subway " as used therein to include all the subways, tunnels, etc., which the commission has constructed or may construct under the aforesaid acts. As to future tunnels, of course this is not a lease but only a contract to let them if they are built under the said acts. The Statute of 1894, c. 548, § 26, was to the effect that the commission " may construct a tunnel . . . from a point on or near Scollay Square in the city of Boston, . . . to a point on or near Maverick Square." Such a contract is not impaired in any way by a repeal of so much of the act as gives the commission authority to build, and it may be that, if it were necessary, we should say that a tunnel with a different terminus built in form under another and later act is not within the words of the lease, — that, in the words of *Browne* v. *Turner*, 174 Mass. 150, 160, the contemplated tunnel is " a substitute for the tunnel authorized by St. 1894." We prefer, however, to put our decision on more substantial grounds. The railroad company does not ob-

ject to the change, as was the case in *Walla Walla* v. *Walla Walla Water Co.* 172 U. S. 1. The city has no greater interest in the lease than it has in the tunnel. Its interest in the lease is as much public property and as subject to legislative control as its interest in the tunnel. No part of the proceeds go to its private uses, (St. 1894, c. 548, § 38; *Mahoney* v. *Boston*, 171 Mass. 427, 430,) and if any part did go to such uses it is hard to see how, as against itself, the city, by making a contract to let public property held by it subject to the control of the Legislature, could cut down this control. The control is not subject to the chance of the city's contracting, but the contract is subject to the power of the Legislature over the subject matter. *Essex Public Road Board* v. *Skinkle*, 140 U. S. 334, 339, 340. *New Orleans* v. *New Orleans Water Works Co.* 142 U. S. 79, 91, 92. *Chicago, Burlington, & Quincy Railroad* v. *Nebraska*, 170 U. S. 57, 72. *Railroad Co.* v. *Ellerman*, 105 U. S. 166. See *Brighton* v. *Wilkinson*, 2 Allen, 27; *Brimmer* v. *Boston*, 102 Mass. 19; *Agawam* v. *Hampden*, 130 Mass. 528, 530, 531 *et seq.* We assume, for purposes of discussion, without deciding, that the contract as to future tunnels was within the authority given by St. 1895, c. 440, § 6; St. 1896, c. 492.                    *Bill dismissed.*