JOSHUA M. SEARS *vs.* GEORGE G. CROCKER & others.

MERCHANTS NATIONAL BANK *vs.* SAME.

JOHN C. GRAY & others, trustees, *vs.* SAME.

Suffolk.   December 9, 10, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Way*, Extent of public easement. *Boston.*

*Semble*, that the owner of land taken for a street holds it subject to the right of the Legislature to appropriate the space above and below the surface as well as upon it, in any reasonable way, for the purposes of public travel, without providing compensation.

Under St. 1894, c. 548, and later statutes, the construction of the subway beneath the surface of Court Street and State Street in Boston imposes no additional easement on land owned by the abutters to the centre of those streets, and the Boston transit commissioners lawfully can construct such subways without taking in fee the land under the streets.

The provision in St. 1902, c. 534, § 19, that the city of Boston "shall have, hold and enjoy in its private or proprietary capacity, for its own property," the several subways and the tunnel built and to be built under that and former statutes, gives a title to the subways and tunnel merely as structures, and confers on the city no ownership of the land lawfully occupied by those structures.

THREE BILLS IN EQUITY, filed January 2 and March 20, 1903, by the owners of property on Court Street and State Street in Boston, owning the fee to the centre of those streets, to restrain the Boston transit commissioners from constructing a subway or tunnel through the land of the petitioners by authority of St. 1894, c. 548, St. 1895, c. 440, St. 1897, c. 500, and St. 1902, c. 534, without recording in the registry of deeds for the county of Suffolk a description of the land to be taken as required by St. 1894, c. 548, § 32, for any taking by right of eminent domain.

The cases came on to be heard before *Morton*, J., who, at the request of the parties, reserved them upon the bills, answers and agreed facts for determination by the full court, such decrees to be entered as equity and justice might require.

*John Chipman Gray & E. W. Hutchins*, for the plaintiff in the first case.

*L. S. Dabney & E. G. Loomis,* for the plaintiffs in the second and third cases.

*T. M. Babson,* for the defendants.

KNOWLTON, C. J.    These three cases present the same questions, and they may be considered together in one opinion. They are bills in equity to obtain an injunction against the defendants as members of the Boston transit commission, to prevent the construction of a subway and tunnel from Scollay Square to East Boston through public streets in front of the premises of the several plaintiffs, without a formal taking of land in the streets.    The plaintiffs contend that the construction of the tunnel or subway, without a formal taking of land in the streets, is unauthorized and illegal, because it would impose an additional servitude upon lands previously taken for streets and in that way would deprive the plaintiffs of property as owners of the fee in parts of these streets, and because the St. 1894, c. 548, § 31, provides for the taking of property "held under or by title derived under eminent domain, or otherwise." They also say that their position is established and their contention confirmed by the provisions of the St. 1902, c. 534, § 19, that "The city shall have, hold and enjoy in its private or proprietary capacity, for its own property, the existing subway, the East Boston tunnel, the Cambridge Street subway and the tunnel and subway built under this act," etc.

The question whether the construction of the tunnel will create an additional servitude upon the plaintiffs' lands in the public streets lies at the foundation of these cases, and should be answered at the outset.    The rules and principles applicable to such questions have often been considered by this court. *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515. *Pierce* v. *Drew,* 136 Mass. 75.    *Lincoln* v. *Commonwealth,* 164 Mass. 1.    *Howe* v. *West End Street Railway,* 167 Mass. 46. *White* v. *Blanchard Brothers Granite Co.* 178 Mass. 363.    *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397.    *Eustis* v. *Milton Street Railway,* 183 Mass. 586.    In the last two cases the doctrine was stated broadly, in accordance with previous decisions, that this public easement includes "every kind of travel and communication for the movement or transportation of persons or property which is reasonable and

proper in the use of a public street." In the early settlement of the country and in the location of streets in later times, these ways were appropriated to the use of the public for the movement of persons and property from place to place, just as the adjacent lands were appropriated to the use of private owners. The original proprietors of lands in Boston and the original proprietors of lands in New York did not foresee the growth of population and business which has induced landowners in the largest cities to erect buildings fifteen or twenty stories high, or more, and to excavate under them basements and cellars and sub-cellars. to be ventilated by the use of engines, to be lighted by electricity, and filled with merchandise. They did not think that the surface of the streets would be insufficient for the use of the people with convenience and comfort in moving to and fro and passing in and out in the transaction of business or the pursuit of pleasure. It is now a fact of common knowledge that the streets of those parts of Boston which are most crowded are entirely inadequate to accommodate the public travel in a reasonably satisfactory way if the surface alone is used. Our system, which leaves to the landowner the use of a street above or below or on the surface, so far as he can use it without interference with the rights of the public, is just and right, but the public rights in these lands are plainly paramount, and they include, as they ought to include, the power to appropriate the streets above or below the surface as well as upon it, in any way that is not unreasonable, in reference either to the acts of all who have occasion to travel or to the effect upon the property of abutters. The increase of requirements for the public within the streets of our large cities has probably equalled, if it has not surpassed the increase of requirements for business along the streets.

The Legislature, the guardian of public interests and of private rights, has determined that the space below the surface of certain streets in Boston is needed for travel. The question is whether action under the statutes involves an acquisition of a new right as against the landowner, or only an appropriation and regulation of existing rights. It hardly can be contended that this is an unreasonable mode of using the streets in reference either to travellers or abutters. If it is not an unreasonable mode of

using them, the mere fact that it deprives abutters of the use of vaults and other similar underground structures in the streets, which they have heretofore maintained, is of little consequence. Abutters are bound to withdraw from occupation of streets above or below the surface whenever the public needs the occupied space for travel. The necessary requirements of the public for travel were all paid for when the land was taken, whatever they may be, and whether the particulars of them were foreseen or not. The only limitation upon them is that they shall be of a kind which is not unreasonable.

In the present case the travel which is being provided for is from place to place within the city. There are stopping-places on the subway at convenient points. In that respect it is different from a tunnel designed only or chiefly for travel for long distances. The new method is a substitution in part of a subterranean use of the streets for a use of their surface for the same general purpose. It is impracticable to have direct communication between the premises of abutters and the cars in the tunnel, but by going a short distance access to them may be had from any place. We are of opinion that this use of the streets is within the purposes for which the lands were taken and that no additional servitude is created by it.

The cases bearing upon this subject which have been decided in other courts differ so much from this in their facts and in the legislation to which they relate that they are not very important. See *Ramsden* v. *Manchester, South Junction & Altrincham Railway*, 1 Exch. 723; *In re New York District Railway*, 107 N. Y. 42, 52; *Hodgkinson* v. *Long Island Railroad*, 4 Edw. Ch. 411; *Adams* v. *Saratoga & Washington Railroad*, 11 Barb. 414; *Chicago* v. *Rumsey*, 87 Ill. 348; *Summerfield* v. *Chicago*, 197 Ill. 270, 282; *Baltimore & Potomac Railroad* v. *Reaney*, 42 Md. 117.

The authority to take lands, conferred upon the defendants by the St. 1894, c. 548, § 31, although it includes land taken and held under the right of eminent domain, does not imply that there is no right to use the public ways without such taking. Indeed, the first part of the section gives the right to use these ways before it refers to the subject of taking. It then goes on to authorize the taking of private property, and closes by giving a broad general authority.

Nor is the St. 1902, c. 534, § 19, so significant in their favor as the plaintiffs contend. It declares that " the city shall have, hold and enjoy in its private or proprietary capacity, for its own property," the several subways and the tunnel built and to be built under the statutes that have been passed. This is in accordance with the previous intimations of this court as to ownership of the subway first constructed. *Mahoney* v. *Boston,* 171 Mass. 427, 429. *Browne* v. *Turner,* 176 Mass. 9, 13. But it does not purport to give a private proprietary right to anything more than the subways and tunnels as structures. It does not deal with the rights of the public to use the streets, or with any right of private property in the streets themselves. It leaves the subways lawfully resting in the public streets by virtue of the rights of the public therein, and it gives the city the same kind of ownership of the structures that gas companies and electric lighting companies have in their pipes and conduits, except that the city is charged with certain special trusts in the ownership of these subways. This provision of the statute does not purport to take from landowners on the streets any part of their property.

The statute gives damages to all persons injured in their property by the acts of the commission, but the question whether these plaintiffs are entitled to damages under this provision is not before us.

*Bills dismissed.*