**CITY OF BOSTON v. McGOVERN et al.**

(Circuit Court of Appeals, First Circuit. July 25, 1923.)

No. 1587.

1. Contracts &99(1)—Suit for cancellation of executed contract.

In a suit by contractors for construction of a tunnel for cancellation of the contract, after its execution, on the ground of fraud in withholding of information respecting a ledge to be excavated which increased the cost of the work, where the contract was let to the lowest bidder and complainants incurred no loss in its execution, but in fact made a large profit, it was incumbent on them to show that if they had known of the ledge they would not have made the contract and that they could have secured the contract on a higher bid and made a larger profit.

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

292 F.—45

2. **Judgment ☞713(1)—Issues of fact or law once determined may not be relitigated between the parties.**

Issues of fact or of law, once determined by a court of competent jurisdiction, may not be relitigated between the parties.

3. **Stipulations ☞18(9)—Decision of court on issue of law submitted by stipulation is conclusive between the parties.**

A party, by a stipulation to submit an issue of law to an appellate court, estops himself to question the finality of the court's decision.

4. **Judgment ☞713(1)—Estoppel by judgment is matter of substance and not of form.**

The estoppel of a judgment grows out of matter of substance, and on an appeal in equity the court is required to give it effect in accordance with the substantial rights determined, disregarding mere matters of form.

5. **Judgment ☞656—Conclusiveness; decision of legal issue on demurrer is "decision on the merits."**

A decision by the highest court of a state on a demurrer, finally determining legal issues, between the parties, in the strictest sense of the term, is a "decision on the merits."

6. **Courts ☞366(8)—State decisions as to liability which may be imposed on city binding on federal courts.**

A decision by the highest court of a state as to the obligation which may be imposed on a city of the state by a statutory commission, and as to the mode in which that obligation shall be imposed, is authoritative in the national courts.

7. **Judgment ☞828(3)—That the judgment of a state court may be erroneous does not affect its conclusiveness in a federal court as between the parties.**

A claim that the judgment of a state Supreme Court violates the constitutional rights of a party, or that it is on a question of general law, and therefore not binding on a federal court, does not render such judgment reviewable by a federal court having no appellate jurisdiction over the state court, nor affect its conclusiveness in that court as between the parties.

8. **Municipal corporations ☞375—Court bound by statute limiting liability.**

Where a city is made an agency of the state for the making of a public improvement, not for the benefit of the city alone, the liability of the city is limited by the terms of the statute; and where that requires a written contract, made by a statutory commission to bind the city for work done, a court of equity cannot impose a liability upon it on a quantum meruit, or otherwise beyond the terms of a written contract.

9. **Judgment ☞948(1)—Res judicata may be given effect regardless of technical pleading.**

The right of a federal court to decline to make a decision contrary to that of a state court, made upon the same issues and between the same parties, it may exercise irrespective of any technical failure of a defendant to perfect its claim of right.

10. **Contracts ☞97(2)—Contractors held not entitled to cancellation for mistake after completion of the contract.**

Contractors for construction of a tunnel *held* not entitled to cancellation of the contract on the ground of mutual mistake as to the character of some of the material to be excavated, where on encountering the unexpected rock they elected to proceed with the contract, with notice of a claim for extra compensation.

Appeal from the District Court of the United States for the District of Massachusetts; Charles F. Johnson, Judge.

Suit in equity by Patrick McGovern and others against the City of Boston. Decree for complainants, and defendant appeals. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. Mark Sullivan, Corp. Counsel, of Boston, Mass. (Samuel Silverman, Asst. Corp. Counsel, of Boston, Mass., on the brief), for appellant.

John F. Cronan, of Boston, Mass. (Clarence J. Smerdon, of Boston, Mass., on the brief), for appellees.

Before BROWN, MORRIS, and PETERS, District Judges, sitting as Circuit Judges.

BROWN, District Judge. This appeal by the city of Boston relates to proceedings in the District Court for the District of Massachusetts, upon a bill in equity by a firm of contractors, P. McGovern & Co., for the cancellation of a contract made December 16, 1914, with that firm by the city of Boston, acting by the Boston Transit Commission, a statutory commission, for the construction of Section E of the Dorchester Tunnel, upon the ground that they were induced to make their bid and to enter into the contract by misrepresentations as to the nature of the materials to be excavated. Cancellation was prayed on the ground of fraud, or in the alternative of mutual mistake of facts.

At the outset we are met by the fact that the judgment of the District Court sustaining the right to cancellation and to recovery from the city of Boston, is in direct conflict with a decision of the Supreme Judicial Court of the State of Massachusetts, made before the filing of this bill, in a case between the same parties and upon the same issues at law, relating to the right of the plaintiffs to an accounting from the city of Boston, and to cancellation of the contract on the ground of fraud. McGovern v. Boston, 229 Mass. 394, 118 N. E. 667. The plaintiff lost in the state court by a decision on legal issues on demurrer, but prevailed in the District Court upon the ground of fraud. Although the construction of the tunnel had been fully completed, with a profit to the contractors of $408,020.85, measured by the difference between the actual cost, $1,806,903.38, and the contract price, $2,214,924.33, the District Court found that plaintiffs were entitled to cancellation, that a profit of $543,096.82 was a fair profit, and that a fair price for the work was $2,350,000; and by final decree ordered payment by the city of Boston in accordance with that finding.

The result of canceling the contract was to relieve the contractor from certain provisions of the contract that were favorable to the city of Boston; for example:

"Item (b). For rock excavation the sum of six dollars and fifty cents ($6.50) per cubic yard."

"Item (k). For all maintaining and protecting of the buildings and structures on the line of work, for all excavation made and concrete placed outside of the limits defined in the specifications or on the contract plans, and for all other work and risks included in this contract not covered by other items, the gross sum of five thousand ($5,000) dollars."

"Item (w). For furnishing, installing, operating and maintaining in repair a complete compressed air plant, including airlocks, bulkheads, air compressors, piping, and all other necessary apparatus; for all additional risks involved by doing the work in compressed air which are not covered by the other items of the bid, the gross sum of thirty-five thousand ($35,000) dollars.

"Item (x). For extra work, done by written order of the engineer, approved by the Commission, not similar in character to the foregoing items, and for

which no price is set in the said written order, its direct (not including consequential) cost to the contractor, as determined by the engineer, and not exceeding what the engineer deems reasonable, plus 10 per cent. of said cost."

Without cancellation of the contract, the plaintiffs as claimants for extra compensation above that determined by the contract would have had to meet defenses based upon protective clauses in the contract, limiting compensation for extra work or unforeseen risks.

The substance of the plaintiffs' claim was not that they had been fraudulently induced to enter into an unprofitable contract to their damage, but that they had been defrauded of a larger profit, to which they would have been entitled had they been informed that test borings made by the Commission indicated the existence of ledge, which was unexpectedly encountered in the progress of the work.

The master, and the District Court, found that the plaintiffs were induced to make their bid and sign the contract by concealment and misrepresentation on the part of the Commission (the Boston Transit Commission) and its engineers, in respect to the character of the soil indicated by test borings made by them, and expressly found them "guilty of fraud in fact." The master also found:

"That the plaintiffs would not have made the bid and contract in question had they known the truth about said borings, and that the rock or mixed face excavated by the plaintiffs increased very materially the time necessary to complete the tunnel, and the costs and risks involved."

Mr. McGovern testified:

"Q. Would you prefer the profit on the job, or not have the job at all?
"A. No; I would rather have the job."

Mr. Perrin, one of the partners, testified:

"Q. If you had been told that you could do this job and have all the costs paid, and be paid $200,000 as a profit, would you have been glad to get it?
"A. With every risk removed and an absolute guaranty of that profit, it would have been equivalent to an approximate profit of 10 per cent. I think; yes."

The defendant contended that upon the evidence the additional cost by reason of encountering ledge was $19,170, or but 1.06 per cent. of the total cost of the tunnel.

In view of the fact that, though the lowest bidder for the job, the plaintiffs named a price which covered all contingencies incidental to a work of that character, and also the unexpected contingency which is the plaintiffs' ground of complaint, by the large margin of $408,000, we find difficulty in agreeing with the master's conclusion that the plaintiffs would not have made the bid had they then known what they afterwards discovered.

If there was fraud, it was found by the District Court to be the fraud of the "Commission and its engineers." Could this fraud be attributed to the city of Boston, so as to deprive it of all the protection of the contract made in its behalf by a statutory commission (the Boston Transit Commission) and also of the protection of a statute defining the mode in which a contractual obligation might be imposed upon the municipality?

[1] The plaintiffs have not been damaged unless it appears that but for the fraud of which they complain they would have made a profit exceeding the sum of $408,000.

It seems to be necessary in order to support the judgment of the District Court to find that had the plaintiffs known what they say was concealed (i. e., that borings indicated the presence of ledge), they would not have made this contract; and, furthermore, that they would have had a contract upon broader terms and at better prices, for the excavation of rock, ledge, or "mixed face," i. e., ledge and earth in combination.

That the plaintiffs in their bid made a large allowance for error in estimates of cost is apparent. To what extent, in a competition for a job to be awarded to the lowest bidder, they would have increased their bid had the borings been described on the plans as stopping at "rock" or "ledge," instead of at "hardpan," the term used on the plans, is speculative. In attempting to determine what would have been a fair bid, or a fair price for the entire work, had the plans disclosed borings terminating in rock, elements of uncertainty and speculation were introduced into the case which greatly prolonged the hearings. Doubt is suggested whether, upon such a supposititious bid, the plaintiffs would have been the lowest bidder, and whether they would have gained the profits which they did make. It should be noted, however, that the plaintiffs desired to limit the case to the question of what should be paid as a fair price, in addition to prices named in the contract, for excavating ledge and earth in combination. The defendant, however, insisted that if there was to be cancellation it was entitled to have the fair value of the entire work determined on the basis of cost, with a reasonable percentage of profit, and that upon this theory the plaintiffs already had received full compensation.

Expert testimony was offered as to what would have been a fair bid had ledge been indicated on the plans, and as to what percentage should have been added to such bids in order to provide for risks and profit. The master's report does not state the additional cost to the contractor by reason of excavating ledge, nor show what amount would compensate the contractor for any loss of profit, or for extra work on the contract, but proceeds to estimate the fair value of the whole work, and apparently gives great weight to the argument that the additional risks gave a right to a larger percentage of profit.

The plaintiffs, being overruled in their attempt to limit the scope of the hearings before the master, then proceeded upon the theory that they were entitled to show what would have been a fair bid for a contractor to make, had the plans indicated that the excavation of "mixed face," composed of ledge and earth in combination, was a necessary part of the construction of the tunnel.

Were we to go into the details of the many questions raised by the defendant's 118 assignments of error, we should be required to resolve many serious doubts upon the question of the right of the plaintiffs to full cancellation of the contract, and upon the method of computing the amount of monetary compensation which, by the judgment of the District Court, the city of Boston is required to make. We think,

however, that the crucial question in the case is as to the liability of the city of Boston to the plaintiffs, assuming that the plaintiffs have made out a case which would entitle them to relief against a private corporation or individual.

The present case illustrates the necessity for statutory protection of municipal corporations, which are charged with liability imposed upon them by the action of a statutory commission. Litigation between these parties was begun as early as February 28, 1917, in the Supreme Judicial Court of Massachusetts; and in that court, and the District Court, has since proceeded at great expense to both parties, although the contract itself makes provision for the prevention of disputes and litigation, and for the correction of errors or inaccuracies in the plans and specifications.

[2] The case also illustrates the practical necessity for the rule which requires that issues of fact or of law, once determined by a court of competent jurisdiction, shall not be relitigated between the parties. In Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 299, 37 Sup. Ct. 506, 508 (61 L. Ed. 1148), it was said:

"This doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect. Kessler v. Eldred, supra [206 U. S. 285]."

The present bill was filed April 26, 1918. The city of Boston, on June 29, 1918, filed a motion to dismiss because of its insufficiency to entitle the complainant to any relief, and because the matters alleged in said bill were res judicata as against the defendant.

On August 30, 1918, the motion was denied; but on the same day the motion of the members of the Boston Transit Commission (original parties defendant) to dismiss the bill as against them was granted. No appeal has been taken by the plaintiffs from the dismissal of the bill against the members of the Boston Transit Commission, and the litigation has proceeded against the city of Boston alone.

In support of its motion to dismiss, the defendant relied upon McGovern v. Boston, 229 Mass. 394, 118 N. E. 667, a decision upon demurrer to a bill which presented questions of law as to the liability of the city of Boston, which are substantially the same as those presented to the District Court.

While the defendant's motion to dismiss seems to have been treated merely as a demurrer to the bill, yet the motion in terms raised the question of res judicata, and the opinion rendered by the Supreme Judicial Court of Massachusetts was not only presented as a statement of the law of Massachusetts, but as a decision between the same parties. It thus appears that, after invoking relief from the highest court of the state, and after an adverse decision upon the merits of the legal issues, and while that decision remained unreversed, the plaintiffs, in order to avoid the effect of that decision, sought, and practically procured, its reversal by the District Court.

In Fayerweather v. Ritch, 195 U. S. 276, 299, 25 Sup. Ct. 58, 64 (49 L. Ed. 193), it was said:

"Private right and public welfare unite in demanding that a question once adjudicated by a court of competent jurisdiction shall, except in direct proceedings to review, be considered as finally settled and conclusive upon the parties. Interest reipublicae ut sit finis litium."

If there was any irregularity or informality in the mode of presentation of the fact that the matter pending before the District Court already had been adjudged between the parties by the Supreme Judicial Court of Massachusetts, which might have justified the District Court in disregarding the contention that the Massachusetts judgment constituted res judicata, and treating the motion to dismiss merely as a demurrer, we are now informed by the plaintiff's brief that after the decision, which held that the members of the Boston Transit Commission, in making the contract in question, "were not servants or agents of the city, but acted as public officers. As such the city is not liable for their negligence"—there was filed in the state court an amended bill striking out the allegations of fraud and setting up mutual mistake of material fact as ground for relief. This was a submission to the decision of the Supreme Judicial Court.

[3] Furthermore, it appears that the parties, after a decision in the state court by a single judge, fully submitted to the Supreme Judicial Court of Massachusetts the issues of law relating to the construction of section 17 of the Massachusetts statute, and to the liability of the city of Boston for the alleged fraud, with a stipulation that, if the full court should sustain the demurrer, a decree was to be entered dismissing the bill, unless the court should thereafter allow an amendment to the bill. This stipulation is inconsistent with any right to dismiss the bill without prejudice as to the matters decided by the Supreme Judicial Court. The force of that stipulation was not avoided by an amendment striking out the matter in issue, and filing an amended bill for mistake. The plaintiffs are estopped by this stipulation to question the finality of the decision on the matters in issue that were determined against them. Keown v. Keown, 231 Mass. 404, 121 N. E. 153.

[4] Upon an appeal in equity this court is required to disregard mere matters of form and to give judgment according to the substantial rights. It should be remembered that the estoppel of a judgment grows out of matter of substance, and form has little if anything, to do with it. Bigelow on Estoppel (6th Ed.) p. 96.

"The doctrine of res judicata is not a technical doctrine applicable only to records. It is a very substantial doctrine, and it is one of the most fundamental doctrines of all courts, that there must be an end of litigation, and that the parties have no right of their own accord, after having tried a question between them and obtained a decision of a court, to start that litigation over again on precisely the same questions." In re May, 28 Ch. D. 516, 518.

[5] The brief for the plaintiffs urges that as the decision in McGovern v. Boston was rendered on a demurrer, it was not in itself a final decision on the merits, and cannot, therefore, be regarded res judicata; but a decision by the highest court of a state upon demurrer,

finally determining legal issues 'between the parties, in the strictest sense of the term, is a "decision on the merits." Southern Pacific Railway Co. v. United States; 168 U. S. 1, 50, 18 Sup. Ct. 18, 42 L. Ed. 355; Freeman on Judgments, § 267; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004; Gould v. Evansville, etc., 91 U. S. 526, 533, 534, 23 L. Ed. 416; Bissell v. Spring Valley Township, 124 U. S. 225, 8 Sup. Ct. 495, 31 L. Ed. 411; Oklahoma v. Texas, 256 U. S. 70, 85, 88, 93, 41 Sup. Ct. 420, 65 L. Ed. 831; James A. Keown v. Mary E. Keown, 231 Mass. 404, 121 N. E. 153; Northern Pacific Railway Co. v. Slaght, 205 U. S. 122, 130, 27 Sup. Ct. 442, 51 L. Ed. 738; Yates v. Utica Bank, 206 U. S. 181, 27 Sup. Ct. 646, 51 L. Ed. 1015; Garner v. Second Nat. Bank (C. C.) 89 Fed. 636; In re American Brewing Co., 112 Fed. 752, 759, 50 C. C. A. 517. .

[6] We are of the opinion that the decision of the state court on demurrer conclusively determined as between these parties that the plaintiffs are not entitled to maintain their bill upon their allegations of fraud by public officers inducing the contract. See Forsyth v. Hammond, 166 U. S. 506, 17 Sup. Ct. 665, 41 L. Ed. 1095. But even were we not obliged to give effect to the Massachusetts decision as a decision between the parties, we should be obliged to give it effect as a binding decision as to the obligation which may be imposed upon a city by a public statutory commission, and as to the mode in which that obligation shall be imposed. It belongs to the state to say under what conditions it will permit public work to be done on its behalf or on behalf of its municipalities. Heim v. McCall, 239 U. S. 175, 189, 191, 192, 36 Sup. Ct. 78, 60 L. Ed. 206, Ann. Cas. 1917B, 287; Stewart v. Kansas City, 239 U. S. 14, 36 Sup. Ct. 15, 60 L. Ed. 120; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260; Yost v. Dallas County, 236 U. S. 50, 56, 35 Sup. Ct. 235, 59 L. Ed. 460.

The extent of the powers and liabilities of municipal corporations under the statutes of a state is generally a question of local law, upon which the decisions of the court of a state are authoritative in the national courts. Georgia Railway & Power Co. v. Town of Decatur, 43 Sup. Ct. 613, 67 L. Ed. ——, Supreme Court of United States, June 4, 1923; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 116, 33 Sup. Ct. 967, 57 L. Ed. 1410; Claiborne County v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489, 28 L. Ed. 470; Richmond v. Smith, 15 Wall. 429, 438, 21 L. Ed. 200; Milheim et al. v. Moffat Tunnel Improvement District, 43 Sup. Ct. 694, 67 L. Ed. ——, Supreme Court of United States, June 11, 1923; Blaylock v. Incorporated Town of Muskogee, 117 Fed. 125, 54 C. C. A. 639; City of Denver v. Porter, 126 Fed. 288, 294, 61 C. C. A. 168; Johnson v. City of St. Louis, 172 Fed. 31, 96 C. C. A. 617, 18 Ann. Cas. 949.

[7] The act of the Legislature authorizing the construction of the tunnel in question, known as the Dorchester Tunnel, was approved July 20, 1911 (Mass. Stat. 1911, c. 741), and contains among other provisions the following:

"Section 17. The Commission may make contracts in the name of the city for the work herein authorized, but all contracts involving two thousand dollars or more in amount shall be in writing and signed by a majority of

the Commission; and no such contract shall be altered except by an instrument in writing, signed by the contractor and a majority of the Commission, and also by the sureties, if any, on the bond given by the contractor for the completion of the original contract. No such contract, and no alterations of any such contract, shall be valid or binding on the city unless executed in the manner aforesaid."

That this decision of the Massachusetts court in the case between these parties related to the construction of this statute, and to the limitations thereby imposed upon the liability of the city of Boston, appears from the following language of its opinion (229 Mass. 397, 118 N. E. 668):

"The provision in the statute that all contracts involving $2,000 or more in amount shall be in writing and signed by a majority of the commission, manifestly was intended by the Legislature to protect the city of Boston from the uncertainty and danger of oral contracts involving large amounts, and from hasty and ill-advised action. A contract in writing, expressed in clear and certain language, free from ambiguity, would relieve the city from the dangers attendant upon contracts, the scope and effect of which might depend wholly upon verbal talk, subject to different interpretations in view of the language used by the parties. Statutes, city charters and ordinances relating to municipalities, containing similar provisions, have often been upheld as reasonable and proper safeguards of binding force upon municipalities and their officers and agents, as well as upon those who contract with them. United States Drainage & Irrigation Co. v. Medford, 225 Mass. 467, 472; Fiske v. Worcester, 219 Mass. 428; McLean v. Holyoke, 216 Mass. 62; Sullivan v. Mandell, 212 Mass. 174; Commercial Wharf Corp. v. Boston, 208 Mass. 482. The plaintiffs are chargeable with knowledge of the provisions of section 17 and are bound by its terms. Fiske v. Worcester, supra.

"The members of the Boston Transit Commission, in making the contract in question under section 17 above quoted, were not servants or agents of the city, but acted as public officers. As such, the city is not liable for their negligence. Stewart v. Hugh Nawn Contracting Co., 223 Mass. 525; Murphy v. Hugh Nawn Contracting Co., 223 Mass. 404; Codman v. Crocker, 203 Mass. 146, 154; Mahoney v. Boston, 171 Mass. 427. See also Bolster v. Lawrence, 225 Mass. 387. Nor is a municipality liable for the misconduct of its public officers. Johnson v. Somerville, 195 Mass. 370; Heiser v. New York, 104 N. Y. 68.

"As the city cannot be chargeable upon an express contract entered into in contravention of the statute, it is equally plain that no recovery can be had upon an implied contract; to permit such recovery would be to defeat one of the purposes for which the statute was enacted. To allow the plaintiffs to recover upon a quantum meruit would be contrary to the spirit as well as to the letter of the statute, and would be in plain disregard of its terms. Bartlett v. Lowell, 201 Mass. 151. The statute evidently was enacted to safeguard the interests of the defendant; it cannot be evaded or annulled, and must be held to be in full force and effect. Nor can it be regarded as permissive rather than mandatory, or as vesting in the commission a discretionary power to disregard its clearly expressed intent.

"The contention of the plaintiffs, that as there is no express prohibition in the statute that the defendant shall not be charged with work otherwise than under a contract in writing such prohibition cannot reasonably be inferred, cannot be sustained, as the only reasonable inference is that all contracts coming within its terms must be in writing. And the plaintiffs are not entitled to recover under the doctrine of Hayward v. Leonard, 7 Pick. 180, and cases decided upon similar grounds. Atkins v. Barnstable, 97 Mass. 428; Reed v. Scituate, 7 Allen, 141; Walker v. Orange, 16 Gray, 193. Such cases are clearly distinguishable from the case at bar. Nor are they entitled to recover upon a quantum meruit because the defendant has had the benefit of the work. Douglas v. Lowell, 194 Mass. 268, 275, and cases cited.

The case at bar is not within the principle discussed in Long v. Athol, 196 Mass. 497.

"The bill cannot be maintained based on mutual mistake. Such is not the ground alleged for relief, and we do 'not mean to intimate that a bill would lie if brought on that ground. The allegations are not sufficient to warrant a cancellation of the contract or to permit the plaintiffs to recover upon an implied contract. The statute (section 17) which provides that all contracts involving $2,000 or more in amount shall be in writing, is of equal force and effect in a suit in equity as in an action at law."

Under this decision, in order to constitute a contract binding upon the city, a document signed by a majority of a statutory commission is essential. A document of this character must be distinguished from a writing the office of which is merely to certify and evidence something outside itself; a something valid and operative independent of a writing. "It is both a means of proof and a means of constituting the contract which it authenticates." Thayer's Preliminary Treatise on the Law of Evidence, pp. 393, 395; Wigmore on Evidence, §§ 2400, 2404, 2426, 2453, 3424.

The plaintiffs contend that equity has power to grant the plaintiffs compensation; that their right to be paid the fair value of the tunnel does not lie in contract but in the power of a court of equity to give relief under the circumstances existing after the contract shall have been canceled; that this obligation arises not from consent, but from the law, or natural equity.

There is cited the language used in Citizens' National Bank v. Appleton, 216 U. S. 196, 203, 30 Sup. Ct. 364, 365 (54 L. Ed. 443):

" 'The obligation to do justice,' this court said in Marsh v. Fulton County, 10 Wall. 676, 684, 'rests upon all 'persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation.' "

It is contended that McGovern v. Boston is not an authority upon plaintiffs' right to recover after cancellation, but at most contains a dictum of Judge Crosby which is without merit and ill advised. It is also urged that that decision is not binding, because rendered after the plaintiffs' rights had accrued, and also because the plaintiffs' right to compensation is a question of general equity jurisprudence, and not of the interpretation of the meaning of the statute.

The plaintiffs also contend that the decision of the Supreme Court of Massachusetts was a violation of plaintiffs' constitutional rights; that it dealt with a federal question, i. e., a question of general equity jurisprudence—and decided it contrary to the decisions of the Supreme Court of the United States.

Should this be assumed it is evident that the decision of the Massachusetts Court cannot be revised by the District Court of the United States, or by this court.

The plaintiffs' contention on this point is fully disposed of by the opinion in Mitchell v. First Nat. Bank of Chicago, 180 U. S. 471, 481, 21 Sup. Ct. 418, 421 (45 L. Ed. 627):

"It is said that the question here presented was one of general jurisprudence involving the rights of citizens of different states, and that the Circuit Court was not bound to accept the views of the state court but was at liber-

ty, indeed under a duty, to follow its own independent judgment as to the legal rights of the parties. Burgess v. Seligman, 107 U. S. 20. If it were true that the question was in whole or in part one of general law, the thing adjudged by the state court when properly brought to the attention of the Circuit Court would still be conclusive between the same parties or their privies. Whatever may be the nature of a question presented for judicial determination—whether depending on federal, general or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed."

See, also, Forsyth v. Hammond, 166 U. S. 506, 517, 17 Sup. Ct. 665, 670 (41 L. Ed. 1095): -

"Having litigated a question in one competent tribunal and been defeated, can she litigate the same question in another tribunal, acting independently, and having no appellate jurisdiction? The question is not whether the judgment of the Supreme Court [of Indiana] would be conclusive as to the question involved in another action between other parties, but whether it is not binding between the same parties in that or any other forum."

The plaintiffs also contend that the case of Chapman v. Douglas County, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378, is a decision of the Supreme Court that is controlling in this case. That case, however, has no bearing upon the question whether a federal court of equity can disregard the decision of the state court, upon the same issue between the same parties. The earlier case in the state court was a bill for the foreclosure of a mortgage. A demurrer was sustained, on the ground that the notes and mortgage were void, and the bill was thereafter dismissed "without prejudice." 107 U. S. 350, 2 Sup. Ct. 64, 27 L. Ed. 378. The same course was taken upon a similar bill filed in the federal court, which was also dismissed without prejudice. The bill finally under consideration was a bill praying a reconveyance of the property. 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378.

The decision of the state court of Nebraska, which determined the law as to the validity of the notes and mortgage, was a case between third parties, of which the Supreme Court said (107 U. S. 353, 2 Sup. Ct. 67, 27 L. Ed. 378):

"This decision has been accepted by all parties to this suit, and we are not asked to consider any question as to its correctness, or as to our obligation to adopt it. We, therefore, assume it to be the law of Nebraska, applicable to the case, and the basis of further inquiry as to the relative rights of the parties to this litigation."

The mortgage and notes being held invalid, the plaintiff accepted the decision on demurrer to that effect, and asserted a right to a reconveyance. The claim of a right to recover upon the notes and to foreclose a mortgage, and the claim to a reconveyance upon the ground that the notes and mortgage were invalid by reason of the legal disability of the county, were distinct cases. No parallel can be correctly drawn between that case and the case at bar.

The decision between these parties, in McGovern v. Boston, 229 Mass. 394, 118 N. E. 667, is conceded to be the first direct decision in that state as to the effect of section 17 as a bar to plaintiffs' right to recover from the city of Boston. The fact that this exact question had never been decided before it was decided between these same parties

in the Massachusetts court gives the federal courts no right to review that decision; but so far as the case dealt with the subway legislation it was in accordance with numerous prior decisions made before the date of the contract in suit, to the effect that the construction of tunnels in the city of Boston was a public work, imposed upon the city merely as an agency of the government. Prince v. Crocker, 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610; Mahoney v. Boston, 171 Mass. 427, 50 N. E. 939; Browne v. Turner, 176 Mass. 9, 56 N. E. 969; Sears v. Crocker, 184 Mass. 586, 69 N. E. 327, 100 Am. St. Rep. 577; Codman v. Crocker, 203 Mass. 146, 89 N. E. 177, 25 L. R. A. (N. S.) 980; Boston v. Talbot, 206 Mass. 82, 91 N. E. 1014; Collins v. Boston Elevated Railway Co., 217 Mass. 420, 105 N. E. 353, 51 L. R. A. (N. S.) 1154; Murphy v. Nawn Contracting Co., 223 Mass. 404, 111 N. E. 890; Stewart v. Nawn Contracting Co., 223 Mass. 525, 112 N. E. 218.

The creation of the Boston Transit Commission, consisting of five members, three appointed by the mayor and two by the Governor of the commonwealth, with the group of acts concerning subways and tunnels, for the purpose of promoting rapid transit in the city of Boston and vicinity, is a sufficient indication that the work was a public work, and that the intent of the Legislature was that the city of Boston should be charged with financial liability as an agent of the state for governmental purposes, and that the contracts were not to be made by the city for its particular local advantage or pecuniary profit.

It is argued that by reason of changes in the statute law the city is carrying on a commercial enterprise for its own profit, and that the Supreme Court of Massachusetts, in its opinions, has not given to statutory changes the weight which the Legislature intended them to have. We think it unlikely that the statutory changes escaped the attention of that court, or that they could have affected its adherence to previous decisions as to the relations between the Boston Transit Commission and the city of Boston.

[8] Assuming that a contractor may have a right to appeal to a court of equity for the cancellation of a contract and for relief from performing its terms, it by no means follows that a court of equity has power to require compensation to be made by a municipality which did not execute the contract in its own right, but upon which there was imposed an obligation to pay out its funds to the extent determined by a statutory commission. It is not inequitable for a city to interpose as a defense constitutional or statutory limitation upon its liability. If by reason of the fraud of public officers money has been received to which a city is not entitled, it can, of course, be compelled to restore; but for what it has not received for its own benefit, but holds merely as an agency of the state, for a public work of governmental character, and which it cannot restore, there is no equitable ground upon which it should be liable for compensation.

The legal obligation of a city to pay for a public work which is not under its control, and which was not instituted for its benefit, arises out of the exercise of the power of the state through its own commission. To hold that cancellation of such a contract exposes a city to private

responsibility to an undetermined amount would destroy all constitutional or statutory limitations upon municipal indebtedness. In exercising its power of compensation a court of equity of course must follow the law, and cannot override the right of the state to limit municipal responsibility.

The broad statements found in various cases as to the right of a court of equity to compel restoration or grant compensation do not mean that a court of equity can repeal or override state statutes, or impose individual liability on municipal corporations or persons who have acted not for themselves, but for the state government.

But it is said that if there is a right of cancellation of the contract there must also be a right to compensation for the loss resulting from fraud. Primarily the party responsible for fraud is the one who committed it. There seems to be no reason, if a fraud has been committed by public officers, why they should not be the responsible parties. If the state is the beneficiary of the fraud, the moral responsibility for compensation rests upon the state, and not upon a municipality which has been charged with a large obligation for the benefit of a governmental work. The fact that the state is not suable, while the municipality is, is no ground for compelling the city to pay for a structure which may be required for public purposes not its own.

The decision of the state court on demurrer is a broader decision than that the plaintiffs have no right to cancellation; it is that the city is not accountable to the plaintiff contractors by reason of the alleged fraudulent acts.

It is not enough for the plaintiffs to show that they have been deceived; that they have not made as large a profit as they or the court might think just. They must go further, and show that the city has power to make compensation, and is under a legal or moral duty to do so. The power of the court of equity to award compensation as asserted by the plaintiffs amounts to a power to override a state statute and to substitute its own terms for the terms imposed upon a city by a statutory commission.

Litchfield v. Ballou, 114 U. S. 190, 193, 5 Sup. Ct. 820, 822 (29 L. Ed. 132), dealt with a constitutional provision limiting the indebtedness of municipal corporations. It was said:

"If this prohibition is worth anything it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

See, also, Doon Township v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044.

A contract implied in law may be founded upon the equitable principle that no one shall be allowed to enrich himself unjustly at the expense of another.

To establish the liability of the city of Boston, the plaintiffs do not in terms rely upon a contract, express or implied, but upon a natural equity which requires it to pay for what it has received. But if implied contracts are excluded, how can we consistently give relief upon a principle which is exactly that upon which contracts are im-

plied? It is to do the same thing for the same reason, but under a different form of words.

It might be said that by authorizing a contract in the name of the city there was imposed upon it all the liabilities of an ordinary contracting party, including all liability for fraud of those public officers who made the contract in its behalf, and full liability to pay for what it received. But it does not receive for itself, and it does not act for itself. Its obligation, and the limit of its obligation, are defined by a document executed by public officers, and by a statute designed for its protection. It is not inequitable for a municipal corporation to insist that it shall not be charged with financial liability in contradiction of a statute.

We think it proper to observe that on the question of what effect should be given to a decision of the Supreme Judicial Court of Massachusetts upon the same issues of law which were presented to the District Court and to this court, we do not proceed on the ground that there was technical error in treating the defendant's motion to dismiss as a demurrer. The matter of res judicata referred to in said motion did not appear upon the face of the bill, nor was it subsequently set up by answer. Nevertheless, upon the face of the reported decision upon which the defendant relied as a decision of the Massachusetts court upon the legal issues, it appeared that that decision was between the same parties, and it was presented as a decision still unreversed.

The question whether or not a federal court of equity will hear parties who have already submitted the issues to the highest court of a state, and have had a decision thereon, involves not only the rights of the parties, but the right of a court to protect itself from litigation by parties who have already voluntarily presented their case to a state court, and have had their right determined in that court. The highest degree of courtesy, good faith, and respect should mark the relations between courts of different jurisdictions, and it is essential to the orderly administration of justice that courts of the United States having no appellate functions over the state courts, should not be resorted to in order to nullify or supersede by their decrees a decision of the highest court of a state between the same parties. It being conceded that the decision of the state court was between the same parties, and that it is still unreversed, it is manifestly our duty not only to give great weight to it as a decision of the local court, but to respect it and give effect to it as a decision which estops the plaintiffs from renewing the same contentions here, and from depriving the defendant of the fruits of its victory in the state court upon these issues. It is inequitable that the plaintiffs, after the decision of the state court, and when they had lost the right to dismiss their bill without prejudice, should renew the same contentions before another court.

[9] The right of this court to protect itself from litigation of this character, and to decline to make a decision contrary to that of the state court, upon the same issues, it may exercise irrespective of any technical failure of a defendant to perfect its claim of right; since this court may act for its own protection and for the preservation of the

proper relations between federal and state courts. Ridge v. Manker, 132 Fed. 599, 67 C. C. A. 596, cited by this court in F. A. Mfg. Co. v. Hayden & Clemons (C. C. A.) 273 Fed. 374, 378.

[10] There remains to consider the question whether the plaintiffs have made out a case entitling them to relief on the ground of mutual mistake as to the character of the soil to be excavated.

The right to raise this question was not directly denied by the decision of the Massachusetts court. Upon the master's findings of fact it seems impossible to sustain the bill upon the theory of a mutual mistake. But treating the bill as for relief on the ground of mistake alone, we have then a very different question as to the right of cancellation, since the contract itself makes provision for unforeseen difficulties, for extra work, and by its terms indicates that the risk of encountering rock was within the contemplation of the parties.

The decision of the Massachusetts court as to the relations between the public commission and the city, and as to the necessity for a written contract, seems to lead to the conclusion that in enacting section 17 it was the legislative intention that the contract made by a public commission on behalf of the city should be the measure of the obligation of the city upon all contingencies. If this is the legislative policy, then it becomes necessary for a contractor to see that all contingencies are provided for in the contract. In case a modification of the contract cannot be procured in accordance with section 17, or by proceedings against the Boston Transit Commission to compel a modification of the contract, it seems to be necessary to have recourse for any relief on moral grounds to the Legislature representing the state as the ultimate beneficiary, rather than to the municipality which was performing a governmental duty as an agent of the state.

In respect to the charge of fraud the plaintiffs showed that their first discovery and knowledge of the falsity of the statement of test borings was after the final completion of the work, and it was urged that owing to this late discovery the plaintiffs were not barred by an election to proceed under the contract. But this late discovery does not avail upon the question of mistake, for any mistake as to the nature of the soil was at once evident upon encountering ledge. The plaintiffs elected to proceed, and gave notice of their intention to claim extra compensation, but no notice of any intention to abrogate the contract on the ground of mistake.

We are of the opinion that the evidence does not justify a cancellation of the contract on the ground of mistake.

The decree of the District Court is reversed, and the case is remanded to that court with instructions to dismiss the bill; the appellant to recover costs in both courts.